CALVIN A. RUSSELL,

*Plaintiff and Respondent,*

vs.

LORING J. CURRAN,

*Defendant and Appellant.*

(No. 2439; June 7th, 1949; 206 Pac. (2d) 1159).

174

For the Plaintiff and Respondent the cause was submitted on the brief of Erle H. Reid and Hal E. Morris of Torrington, Wyoming and oral argument by Mr. Morris.

For the Defendant and Appellant the cause was submitted on the brief and oral argument of J. L. Sawyer of Torrington, Wyoming.

## OPINION

RINER, Chief Justice.

In this action brought in the District Court of Goshen County by Calvin A. Russell as plaintiff, now the respondent, against Loring J. Curran as defendant and now the appellant, it was sought to obtain the reformation of a written contract for the sale of certain property entered into between these parties on September 17, 1947. The judgment brought here for review was in favor of the plaintiff and the defendant feeling that the trial court was wrong in its conclusion instituted these proceedings by direct appeal. The parties will be subsequently referred to herein as positioned in the District Court or by their surnames.

In order to obtain a reasonable idea of the issues involved in the action a brief outline of the pleadings before us in the record may be given as follows: Plaintiff's petition states in paragraph numbered "1" that the property which defendant agreed to sell and plaintiff to buy was Lot 36 Highway Subdivision, Goshen County, Wyoming together with the house thereon and the furniture therein. The price for this house and lot was to be the sum of $8350, the price of the furniture to be $1400 a total sale price of $9750; in paragraph number "2" that at that time one Donald J. McDonald doing business as Donald J. McDonald Company was acting as agent for said defendant and on behalf of both parties put the contract aforesaid in writing, said writing being marked Exhibit A and made a part of said petition; that when the written agreement was drawn through mutual error and mistake of both parties it omitted any reference to the furniture, the agreement having been hastily drawn; that it was accordingly agreed between them that the parties would later draw another written contract supplying all the details of the agreement but this was never done; that

plaintiff thereafter caused to be paid to the defendant the sum of $9750 and the defendant fraudulently removed the furniture from said house and since has fraudulently refused to deliver the furniture in question here to plaintiff to his damage in the sum of $1400 which defendant has fraudulently refused to pay. Equitable relief and a judgment in the plaintiff's favor was prayed in the sum last mentioned. Exhibit A aforesaid is verbatim as follows:

"Donald J. McDonald Co.

Torrington, Wyo., 9/17, 1947

Received of Calvin Russell the sum of $100.00 DOLLARS, being a deposit and part payment, on account of BARGAIN AND SALE, made this day by Donald J. McDonald Co., as agent for Loring Curran of the certain lot, piece or parcel of land situate in the County of Goshen, State of Wyoming, and more particularly described as follows, to wit:

Lot 36, Highway Subdivision, Near Torrington, Wyo. Said property having been this day sold to said Calvin Russell for the sum of $9750 Dollars, on the following terms and conditions, to wit: $100 Dollars, in hand paid, receipt whereof is hereby acknowledged,

$9650 upon closing of loan

Taxes: Pro Rata—1947

Assessments: None

Insurance: Pro Rata

Possession: Oct. 15, 1947

30 days after delivery of Abstract of Title shall be allowed for examination of Title. If Title does not prove Merchantable, and cannot be made Merchantable, then this deposit to be returned to said purchaser.

This sale made subject to approval of the owner.

DONALD J. McDONALD CO.
By D. J. McDonald Agent

I hereby agree to purchase the above described property upon the terms and conditions above set forth, and in the event of my failure to comply therewith to forfeit the deposit of $100 Dollars as fixed and liquidated damages.

Signed Calvin A. Russell

I hereby approve the above sale, and agree to sell the above described property upon the terms above set forth; to furnish complete Abstract of Title thereto down to date hereof, and authorize said deposit to be returned to Calvin Russell should title finally prove defective I agree to pay Donald J. McDonald Co., the sum of $400 dollars for services hereinabove rendered.

Signed Loring J. Curran"

Defendant's answer in its first paragraph denied each and every allegation in plaintiff's petition not admitted in said answer. In its paragraph No. 2 it is admitted that plaintiff's Exhibit A correctly embodied the terms of the parties' agreement and it contained all the property defendant agreed to sell to plaintiff for the stated price therein and no other agreement was made between said parties; paragraph 3 of the answer denied that there was any mutual error or mistake in omitting the furniture and which was not to be included with the sale of the real estate aforesaid. Paragraph 4 of said answer admits that defendant did not leave the furniture in the house sold to plaintiff and states that defendant never agreed to sell said furniture to plaintiff; that said written contract of sale can not be changed, varied or added to by oral testimony; that plaintiff was negligent if said agreement did not contain all the property which he intended to buy and plaintiff can not ask to recover damages by reason of his own negligence and there change the terms of that agreement. It is asked that plaintiff's petition be dismissed with costs to the defendant.

Plaintiff filed his reply to this answer denying each allegation containing new material.

Where the specifications urged are, as in the case at bar, that the "judgment is not sustained by sufficient evidence" and "is contrary to law" we have many times ruled that we:

"must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it." Dulaney vs. Jensen, 63 Wyo. 313, 181 P. 2d 605 and cases cited.

Accordingly we review the material and pertinent parts of plaintiff's evidence to be considered in disposing of this case as follows:

Donald J. McDonald a licensed real estate broker, called as a witness for the plaintiff stated that he wrote the sale agreement (Exhibit A, supra) himself; that it was signed by Curran and Russell in his presence on the date it bears date and in Scottsbluff, Nebraska; that that instrument does not contain all the agreement as the parties agreed in his presence and as he was supposed to have drawn it; that at that time the witness was acting as agent for Mr. Curran in the sale of his house; that witness was instructed to draw this agreement by both Mr. Curran and Mr. Russell; that it was drawn hastily in Curran's car when Curran, Russell and McDonald were all present; that witness did not insert in said agreement all of it as he was instructed to do and he was aware of that fact at the time; that on June 13, 1947, Curran employed McDonald to sell this property; that the original written listing of the property with witness for sale was signed by Curran in witness' presence; that the exclusive listing price of the property was never changed; that the written sale listing aforesaid is verbatim as follows:

Torrington, Wyoming
June 13, 1947

To: Donald J. McDonald Company

I hereby list for sale with you until January 1, 1948 the following described property:

Lot 36, Hiway Subdivision, Goshen County Wyoming Sales Price: To be determined as : Home $8350.00. If buyer wants furniture then total sale price is to be $9750.00

Commission: 5% of above

Possession: Immediate

It is understood that you are to have the exclusive sale of this property for the period mentioned above.

Signed Loring J. Curran
Loring J. Curran"

This witness also testified that at the time he drew the contract of sale his instructions were to show the purchase price and what it included; that the contract was improperly drawn in that the $9750 should have included certain items of furniture; that the parties negotiated the matter for some time in Curran's auto; that the price to be paid for the home was $8350 and the price of the furniture was to be $1400; that at the close of the deal the furniture was paid for separately from the house price; that Russell gave Curran two checks totaling $1400 after the deed to the house and lot was signed and delivered in witness' presence and these checks were for the furniture and were so accepted; that Curran and wife and Russell were all in witness' office at that time; that the Currans said "of course you understand that certain personal pictures we will take with us"; that Russell and Curran both understood this clearly and that the rest of the furniture was to remain in the house; each of these checks is dated December 10, 1947, one of them being for $475

and the other for $925, and both were cashed with Curran's endorsement thereon. McDonald also testified that Russell did not have enough money, so a loan was obtained from the Prudential Insurance Company and handled through McDonald's office; that both parties signed a written statement in the presence of this witness as to how the loan money thus obtained was to be disbursed which statement was verbatim in these words:

"The Prudential Insurance Company
Mortgage Loan Department,

Omaha Branch Office

Omaha 2, Nebr.

Gentlemen:

You are hereby authorized when and if the above described application for loan is completed to disburse the amount so loaned in the manner following:

| | |
|---|---|
| Loring J. Curran and Lucille C. Curran, consideration for deed | $4971.42 |
| Tri-County Federal Svgs. & Loans Ass'n. mortgage | $3278.58 |

Yours very truly,

/s/ Calvin A. Russell
Borrower

This is to advise that we have received nothing from Calvin A. Russell, et ux, which leaves a balance due of $8350.00. When this sum is paid we will deliver the deed to the County Clerk, in Goshen County, Wyoming, for recording.

/s/ Loring J. Curran

Loring J. Curran"

The same witness stated additionally that he, Curran and Russell, all three agreed that Exhibit A was not the complete contract but that it was "adequate for a

minute"; that witness told both Curran and Russell "this does not show all the items of furniture that ought to be listed"; that Russell said "we'll just get together later on" and Curran agreed and said that some time in the next couple of weeks they would stop in witness' office and draw up another property agreement; that they both agreed that Exhibit A was not the complete contract; that Russell brought up the point that the contract as drawn said nothing about the furniture and that there was not room on Exhibit A to list the furniture properly and Curran agreed that that was so and that one could be typed later giving plenty of room to describe the furniture.

The deed to the house and lot to Calvin A. and Ruby Mae Russell was signed December 10, 1947 by Loring J. Curran and Lucille C. Curran in McDonald's office when Russell was there and McDonald also and this instrument recites a consideration of "one dollar and other valuable considerations" but it also shows United States Revenue Stamps affixed in the sum of $9.35. Curran paid McDonald this amount with other sums as expenses in completing the transaction.

The testimony of McDonald was, in general, fully corroborated by that of Russell also a witness for the plaintiff. The latter testified that the price of the home was to be $8350 and that of the furniture $1400, and that McDonald did not prepare the agreement in accord with instructions from both Curran and Russell; that Russell paid Curran for both the house and lot and the furniture, $8350 for the house and lot and $1400 for the furniture; that he never received any of the furniture for which Curran was paid.

Curran in his testimony denied that there was any agreement between him and Russell about the furniture and said that $9750 was the sale price of the house and lot; that he received a check from the Prudential

Insurance Company through McDonald for $4971.42 the morning the matter was settled and that he had a building and loan mortgage owed to the Tri-County Federal Savings and Loan Association in the sum of $3278.58 and the $100 paid by Russell at the time the contract was signed in Scottsbluff made a total of $8350; that Curran delivered the deed to house and lot.

McDonald further testified that the following statement of sale expenses was submitted to Curran and examined by him at the time the deal was closed December 10, 1947:

"Loring J. Curran

| | |
|---|---|
| Abstracting Bill | $ 8.00 |
| Record Release of Mtg. | 1.45 |
| Abstract on above | 1.00 |
| Deed Stamps (1.10 per $1000) | 9.35 |

8.80        8350
.55
―――――
9.35

| | |
|---|---|
| Commission | 400. |
| penalty (Tri County) | 34. |

Due 453.80
Escrow 100.
―――――
Due 353.80"

The District Court tried the case without a jury and in its judgment in favor of the plaintiff found for the latter generally and also that:

"On or about December 17, 1947 Plaintiff and Defendant entered into an Agreement whereby Plaintiff was to buy and Defendant was to sell Lot 36, Highway Subdivision, Goshen County, Wyoming, together with the dwelling thereon and the furniture therein contained, less pictures and personal effects, and that the agreed

price for the real property was Eight Thousand Three Hundred Fifty Dollars, ($8,350.00), and the agreed price for the furniture was Fourteen Hundred Dollars, ($1400.00), making a total sale price of Nine Thousand Seven Hundred Fifty Dollars, ($9,750.00).

"THE COURT DOTH FURTHER FIND that by mistake of the scrivener drawing said Agreement no reference was made to the furniture, and that said Contract of September 17, 1947, the original of which is in evidence in this cause and a true copy of which is attached to Plaintiff's Petition, was by mutual mistake of the parties, executed without including in said Contract a reference to said furniture, and that said Contract should be reformed to include such reference."

It was therefore adjudged that the contract of September 17, 1947:

"be amended by inserting following the words, 'Lot 36, Highway Subdivision near Torrington, Wyoming', the following words, to-wit: 'together with the furniture in the dwelling house on said property, less pictures and personal effects.' "

There was a further finding in said judgment by the court that:

"the Plaintiff paid the Defendant the sum of Eight Thousand Three Hundred Fifty Dollars, ($8,350.), and received from the Defendant a Deed to said Lot 36 and that thereafter he paid the Defendant the sum of Fourteen Hundred Dollars, ($1400.) the agreed price of said furniture, and that thereafter the Defendant in fraud of the rights of the Plaintiff, removed the furniture from the dwelling on said Lot 36 and has since fraudulently refused, and neglected to deliver this furniture to the Plaintiff, to the Plaintiff's damage in the sum of Fourteen Hundred Dollars, ($1400.), which sum the Defendant refuses to pay."

This finding was followed by a judgment in favor of plaintiff for $1400 and costs. To these findings and judgment exceptions were allowed and this appeal followed.

The defendant insists that the contract of September 17, 1947 can not be changed; that it is complete in itself; that there was no mutual mistake relative to the inclusion of the furniture therein; that parol evidence is not admissible to vary or alter the terms of that written agreement, and that plaintiff was negligent in the matter of the preparation of the contract. These contentions must be examined in the light of the rule of appellate procedure announced in the Dulaney case supra, the evidence outlined above and the authorities presently to be mentioned as follows:

45 Am. Juris. 650, Section 113 discussing the familiar parol evidence rule on which defendant relies says with the citation of abundant supporting authority that:

"It is practically a universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had, and this, even though the instrument in question is within the statute of frauds. So far as the introduction of such proof may be said to violate the statute, it is immaterial whether it comes from the complainant or the respondent. The nature of the action is such that it is outside the field of operation of the parol-evidence rule. If this were not so, a rule adopted by the courts as a protection against fraud and false swearing would, as has been said in regard to the analogous rule known as the statute of frauds, become the instrument of the very fraud it was intended to prevent. Evidence of fraud or mistake is seldom found in the instrument itself, and unless parol evidence may be admitted for the purpose of procuring its reformation, the aggrieved party would have as little hope of redress in a court of equity as in a court of law.

"Generally, it may be said that any testimony which tends to prove the mistake alleged or the intention of

the parties is admissible. A witness in a position to know may testify concerning the intention of the parties to an agreement, to the same effect as to any other fact."

3 Pomeroy's Equity Jurisprudence (5th Ed.) 349, 350, 351, Section 858 states that:

"It is an elementary doctrine that parol evidence is not, in general, admissible between the parties to vary a written instrument, whether the same has been voluntarily adopted, or made in pursuance of a legal necessity. It is equally well settled that mistake, fraud, surprise, and accident furnish exceptions to this otherwise universal doctrine. Parol evidence may, in proper modes and within proper limits, be admitted to vary written instruments, upon the ground of mistake, fraud, surprise, and accident. This exception rests upon the highest motives of policy and expediency; for otherwise an injured party would generally be without remedy. Even the statute of frauds cannot, by shutting out parol evidence, be converted into an instrument of fraud or wrong."

And the same text on page 372, Section 866 remarks further that:

"The doctrine in all its breadth and force is maintained by courts and jurists of the highest ability and authority, which hold that, whether the contract is executory or executed, the plaintiff may introduce parol evidence to show mistake or fraud whereby the written contract fails to express the actual agreement, and to prove the modifications necessary to be made, whether such variation consists in limiting the scope of the contract, or in enlarging and extending it so as to embrace land or other subject-matter which had been omitted through the fraud or mistake, and that he may then obtain a specific performance of the contract thus varied, and such relief may be granted although the agreement is one which by the statute of frauds is required to be in writing."

In similar vein 5 Williston on Contracts pages 4350, 4351, Section 1552 uses this language:

"The right of reformation wherever allowed is necessarily an invasion or limitation of the parol evidence rule, since when equity reforms a writing it enforces an oral agreement at variance with the writing which the parties had agreed upon as a memorial of their bargain. This limitation is necessary to work justice, and there seems no more reason to object to it in case of reformation than in case of rescission for fraud or for mistake. In either case, unless the mistake precludes the existence of a contract at law, it should not be denied that the writing correctly states the actual contract or conveyance which has been made, but since it is inequitable to allow the enforcement of it, and, since justice requires the substitution of another in its place, equity gives relief, where reformation is appropriate and to that end necessarily admits any relevant parol evidence. This is fully recognized so far as executed transactions are concerned irrespective of whether the relief sought is rescission or reformation, and also where the question concerns the rescission of executory contracts.

"The effect of the Statute of Frauds is not equally simple, for here equity, if it seeks to enforce an oral agreement by rectifying a contract or conveyance, is compelled to qualify a positive statutory enactment. Nevertheless, since equity has not shrunk from preventing the Statute of Frauds from working a fraud in cases where there has been part performance, there seems little reason for hesitation in granting reformation where a conveyance has actually been made; and, indeed, reformation of a conveyance in accordance with a prior oral agreement is almost universally allowed in England and in the United States, without regard to whether an increase or diminution of the terms of the conveyance is required."

The same learned author also very aptly says in the same volume, pages 4447, 4448, Section 1596 that:

"It is frequently said that equity will not reform or rescind a contract if the petitioner has been guilty of negligence, or at any rate of gross negligence. That no such principle can be laid down as a universal rule is obvious. In many if not most cases of mistake in the

expression of a contract where reformation is granted, there is some element of lack of care, but, at least, if the mistake is mutual and each party has been careless in failing to make a contract expressing the real intention of both, there seems no reason why relief should not be granted, unless this is made inequitable by some change of position other than merely entering into the contract in question."

In Bronston's Adm'r. vs. Bronston's Heirs, 141 Ky. 693 133 S. W. 584, the Kentucky Court of Appeals has very well said:

"The effect of the reformation is neither to make a new contract for the parties, nor to alter or add to the one they had made. It is to correct the evidence of the contract so as to conform it to the truth. It is to make the memorial of the fact conform to both what was intended and agreed upon. Every written agreement must have been preceded by some kind of oral negotiations or purpose. When the minds meet, because so required to be done by the law to be effectual, or for convenient evidence of it, it is reduced to writing, which is said to be the contract. But if, perchance, by mistake of the parties a part of that which was agreed to is omitted from the writing, it is not in truth the contract. To enforce it as such would be to disappoint the parties and to miscarry them into a conclusion which neither contemplated, and perhaps which neither would have wittingly entered into. It may be therefore reformed, although one of the parties subsequently refuses consent or is dead, so as to express the actual agreement. Worley v. Tuggle, 4 Bush, 168; Mattingly v. Speak, 4 Bush, 316."

A case presenting in some respects the reverse of the situation we find before us now is Roney vs. Gillen, (La. App.), 31 So. 2d 495. In that case it was held that where the parties had made an express oral agreement that certain kitchen and bathroom fixtures were reserved to the vendor but the reservation was not incorporated in the deed, a suit for reformation of that instrument was a proper remedy, since otherwise parol

evidence of the agreement would have been excluded. In affirming a judgment reforming the instrument as asked, the appellate court said:

"Neither do we find the attack upon the nature of the relief to be tenable. It was essential for plaintiff to predicate this action upon a reformation of the written instrument in order to avail himself of the right to establish an additional agreement by parol testimony, which under any other nature of proceeding might have been properly excluded on the ground that it sought to vary the terms of the written instrument."

In Sibley et al vs. Pitts, 140 Ore. 578, 14 Pac. 2d 1002 we find the Supreme Court of Oregon detailing the facts in that litigation thus:

"With the assistance of brokers, plaintiffs and defendant agreed that a transfer should be made by plaintiffs to defendant of certain real and personal property. The real property consisted of a tract of land and a building. Part of the building was in use as a storeroom and the other part as living quarters. The personal property consisted of furniture and other household equipment in use in the living quarters, and a stock of secondhand merchandise in the storeroom.

"The written contract, for the reformation and foreclosure of which this suit was brought, contains a description by metes and bounds of said real property, and, in the body of the contract, only a reference to the personal property in these words, 'Included in the sale of the above described real estate is the personal property described on the attached sheet which is made a part of this agreement.' Said attached sheet does not contain any description of or reference to the stock of secondhand merchandise. The question here to decide is whether a mistake was made by omitting a description of this stock of goods in the preparation of the written contract. Plaintiffs assert that there was such a mistake. Defendant denies it."

The action had been brought in the court below to reform the contract of sale. A decree of reformation was granted. The defense was that plaintiffs in the

suit had given the defendant the merchandise thus located in the building, as an inducement to procure defendant's signature to the contract.

Affirming the judgment rendered in the circuit court for the contract's reformation as prayed, the Supreme Court of Oregon announced that:

"We are unwilling to be influenced by such an alleged defense. We are convinced that both parties agreed that the stock of merchandise was to be transferred by plaintiffs to defendant, not as a gift nor as an inducement to procure the purchase of the real property, but as part of the subject-matter of the contract. Its omission from said supplemental and attached sheet was a mistake, and one unquestionably made by the scrivener."

Closely akin to the case last reviewed and of comparatively recent origin is that of Bisno vs. Herzberg, 75 Cal. App. 2d 235, 170 Pac. 2d 973. That also was an action by the plaintiff Bisno against Herzberg and another to reform a written instrument. The defendants were doing business under the fictitious firm name of Montecito Hotel Inc. The facts involved, the final action of the court below in disposing of the suit, and the question presented by the parties are all succinctly described as follows by the California Court of Appeals in these words:

"This is an action to reform a written instrument in words and figures as follows: 'Montecito Hotel, April 27, 1944. Price: $102,500.00. Cash: $17,500.00. Balance of $85,000 payable 8% per annum payable monthly plus taxes and insurance monthly. After 5 years interest is reduced to 4% per annum and prepayment of 4% per annum. Deed to be given when price has been reduced to $60,000.

" 'Montecito Hotel, Inc., acknowledges receipt of $1,000 to bind this contract, $4,000 to be paid on evidence of good title, balance on or before June 1st.

Buyer: A. Bisno or his assignee

Seller: Montecito Hotel, Inc.<br>Louis Herzberg'

"Upon a proper complaint to revise the writing to express the true and complete intention of the parties, following a trial the court decreed that defendant as owner agreed to sell and plaintiff agreed to buy the Montecito hotel consisting not only of seven parcels of real estate and improvements situate thereon but also of the furniture, fixtures, equipment and all personal property, including the liquor license of defendant, used in and about in connection with the operation of the hotel, for the sum of $102,500 payable as follows: $1,000 of even date with the writing, $4,000 upon the production of evidence of good title in the seller and $12,500 on June 1, 1944. Inasmuch as the controversy involves but one issue the other details of the contract found to have been agreed to will not be necessary to the consideration and determination of the one question, namely: Did the parties intend that the agreement of purchase and sale should include all of the furniture, furnishings, equipment and the liquor license?"

Referring to the evidence presented in the foregoing case the Appellate Court pointed out that:

"A mere conflict of testimony as to a mutual mistake or the mistake of the plaintiff and the fraud of the defendant does not require a denial of the relief demanded (Sullivan v. Moorhead, supra), despite the general rule that the evidence must be clear and convincing. It must be presumed that in reaching its conclusion the court considered and was governed by such general rule in weighing the evidence. Ford v. Ford, 44 Cal. App. 415, 418, 186 P. 164. The rule that the evidence of mistake or fraud in the execution of a writing which is offered for reformation must be clear and convincing is not a requirement of unanswerable evidence. Hobart v. Hobart Estate Company, 26 Cal. 2d 412, 445, 159 P. 2d 958."

"If a mere denial by a defendant that he was mistaken or that he had committed a fraud were sufficient as a matter of law to prevail against the testimony of the party who claims that the writing offered for reformation does not express the true agreement of the parties, rarely or never could a plaintiff in such an action prevail."

After a careful examination of the parol testimony submitted the court's conclusion was that the judgment below reforming the contract of the parties should be affirmed. It may be appropriately noted further that a hearing of this case by the Supreme Court of California sought by appellant after failing in the court of appeals was subsequently denied by the state court of last resort.

It is hardly necessary to point out how closely the two cases last above reviewed resemble the case at bar in so many matters that the results reached in them are consequently of considerable persuasive force as to what should be done here.

It is proper to note also that in Stoll vs. Nagle, 15 Wyo. 86, 86 Pac. 26 this court has recognized the rule that parol evidence is admissible to reform an instrument on account of mistake and it was remarked that there can be no doubt of the rule's correctness. In the same case Mr. Justice Beard also said that:

"The mistake, however, must have been a mutual one. There must have been a meeting of minds and a contract actually entered into, but, by reason of the mistake, the instrument as written does not express what was really intended by the parties. Both the mistake and its mutuality must be established by evidence that is clear and satisfactory."

These rules were reiterated in Grieve vs. Grieve, 15 Wyo. 358, 89 Pac. 569. But those cases are readily distinguishable from the one before us now. In the first case the trial court had found adversely to the relief

of reformation sought and in the second one (the Grieve case) the quantum and quality of proof necessary was absent. See also State Bank of Wheatland vs. Bagley Bros., 44 Wyo. 244, 11 Pac. 2d 572, 589.

In the case at bar the proofs satisfied the trial court, and the appellant comes here with findings and a judgment against him. We agree with the trial court that all in all the parol testimony and the documentary proofs alike herein require a conclusion that the evidence for the plaintiff in the District Court was clear. satisfactory, and convincing that through mutual mistake the sale contract involved herein did not include the furniture in the house as it should have done and a reformation of the contract was properly ordered by that court.

It is evident, entirely aside from the testimony of Mr. McDonald, Curran's own agent, and that of the plaintiff Russell, the defendant, Curran, recognized over his own signature that the price of the house and lot alone should be and was $8350. This recognition appears not only in the written listing of the property on June 13, 1947 with the agent McDonald, but also in the written direction given by the parties and signed by them as to the application of the proceeds of the loan obtained by Russell from the Prudential Insurance Company. It appears as well in the deed of the house and lot from Curran and wife to Russell and wife, for on that deed appear Internal Revenue stamps for only $9.35. If the consideration for the real estate had been as Curran claims, viz. $9750, the deed would have carried revenue stamps in the sum of $10.50, the federal law requiring that 55 cents in revenue stamps should be affixed to conveyances for each $500 of consideration or fraction thereof. There is no claim made that the stamps affixed to the deed by Curran's agent were in the least degree erroneous in amount. It will

be presumed in the absence of evidence to the contrary that the parties intended to and did obey the act of Congress requiring these stamps to be affixed in the proper amount. In fact, Curran, as the record shows, had this matter of revenue stamps being affixed fully explained to him by his agent in the latter's submitted bill for the expenses of the transaction as set out above.

It is urged that the trial court admitted irrelevant and incompetent evidence, but in Williams vs. Yocum, 37 Wyo. 432, 263 Pac. 607 it was said:

"Complaint is made of the action of the trial court in admitting irrelevant and incompetent evidence. A sufficient answer to this is the rule already referred to by this court in the case of Yount v. Strickland, 17 Wyo. 526, at 533, 101 Pac. 942, 944 where it is said:

" 'While there would have been no error in excluding a large part of this evidence, the trial was to the court who was able to sift the wheat from the chaff; and we think the defendants were not prejudiced by its admission.'

"Stated in another way and in general terms, the great weight of authority seems to support the principle that where there is sufficient competent evidence to sustain a finding in a case tried by the court without a jury, admission of incompetent evidence is not ordinarily a ground for reversal." (Citing authorities.)

See also 3 Am. Juris., 505, Section 940; 5 C. J. S. 405 and 406, Section 1564 and elaborate list of cited cases on the point.

The District Court having disposed of the case in hand, as we think, correctly, its judgment is accordingly affirmed.

*Affirmed.*

KIMBALL, J. and BLUME, J. concur.