**Frank R. CHAPMAN and Sharon Chapman, Appellants (Plaintiffs),**

v.

**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee (Defendant).**

**No. 89–224.**

Supreme Court of Wyoming.

Nov. 20, 1990.

Les Bowron and Michael D. Zwickl of Beech Street Law Offices, Casper, for appellants.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Frank R. Chapman and Sharon Chapman appeal from a district court judgment rejecting their suit for specific performance of a real estate transaction. Their claim is based on a preemptive right they hold over a 22.6 acre tract owned by defendant Mutual Life Insurance Company of New York (MONY). MONY had sought to convey the 22.6 acres to a third party buyer, Truda Siefers, in the sale of a 273 acre block which included the smaller tract. Because this court finds that the district court committed clear error in finding that an offer had been made on the 22.6 acre tract which required exercise of Chapmans' preemptive right, we reverse the dismissal of Chapmans' suit against MONY. However, for the same reason, the absence of an offer, we decline to grant specific performance to the Chapmans. Instead, MONY will be enjoined from selling the 22.6 acre tract until such time as it receives a bona fide offer on that specific parcel of land and has properly given the Chapmans an opportunity to exercise their right of first refusal.

## FACTS

On July 31, 1984, the Chapmans entered into a contract for deed with J. Mark Fullerton for approximately 20 acres of land with improvements, as particularly described in the agreement. The agreement also gave the Chapmans a right of first refusal for purchase of an adjacent parcel of approximately 20 acres, which is referred to in this case as "Tract B." MONY, holder of a mortgage from Fullerton on real estate that included Tract B, also signed the contract. Fullerton defaulted on his mortgage in August, 1987, and MONY accepted a deed in lieu of foreclosure. MONY then assumed Fullerton's position as owner and seller to the Chapmans.

Through its local real estate agent John W. Phillips, MONY subsequently advertised a large parcel of land broken out into several tracts, including Tract B, for sale. On April 8, 1988, Truda Siefers submitted an offer to purchase approximately 273 acres of the advertised real estate, includ-

ing Tract B, for $75,000. MONY accepted the offer on April 11, 1988.

Phillips then learned of the Chapmans' preemptive right on the 22.6 acre Tract B in a conversation with Fullerton. He informed MONY of the Chapmans' right of first refusal and was told to contact the Chapmans and offer them the opportunity to buy the property at the offered price. Phillips then called the Chapmans on April 24, 1988, and told them that they possibly had a right of first refusal on Tract B, that Siefers had made an offer, that the offer was for $700 per acre on the irrigated land, and that MONY was giving them an opportunity to buy the land. The Chapmans' response was that at the price of $75,000 for 273 acres Siefers was paying only about $260 or $270 per acre, and that was what they should have to pay. Phillips then contacted Siefers, told her of the Chapmans' preemptive right on Tract B, and asked her to give him a statement of how she arrived at the values in her offer for the entire 273 acre parcel.

Siefers informed Phillips that she had valued the irrigated land at $696.07 per acre and dry land at $105.00 per acre. She considered Tract B irrigated. Consequently, on April 25, 1988, Phillips prepared a Purchase Offer, Acceptance and Agreement on Tract B for the Chapmans' signatures at a price of $15,731.18 (22.6 acres × $696) and sent it to them, together with a cover letter and a copy of Siefers' offer for the larger parcel. The Chapmans were given until 5:00 p.m. on April 28, 1988, to respond.

On April 26, 1988, the Chapmans responded with a letter offering to exercise their preemptive right for $5,992.58. They based this offer on Siefers' lump sum offer of $75,000.00 for 273 acres, which they interpreted as an offer of $265.00 per acre. MONY, through Phillips, sent a letter to the Chapmans on April 28, 1988, which again stated the purchase price as $15,-731.18, and gave them until noon that same date to execute the purchase offer they had received from Phillips on April 25. The Chapmans responded immediately with a letter stating their intention to exercise

their preemptive right and memorializing a telephone conversation between the parties in which they apparently agreed that MONY would prepare a new proposal with a response time of at least 72 hours. On April 29, MONY sent Chapmans another letter, again stating the $15,731.18 price and giving them until May 3, 1988, to exercise their preemptive right. The Chapmans did not respond to this offer. Instead, on May 6, 1988, they filed suit against MONY seeking specific performance by MONY at their price of $5,992.58, or $265.00 per acre. On May 10, 1988, MONY sent the Chapmans a letter stating that the purchase offer from Siefers had been voided, but that MONY believed the Chapmans had failed to exercise their right of first refusal and would market Tract B without further notice to them.

A bench trial was held on July 27, 1989. The district court found that Siefers had offered $15,731.18 for the 22.6 acre tract and concluded that the Chapmans had failed to exercise their right of first refusal although the offer was presented to them three times. Consequently, it dismissed the Chapmans' complaint.

## ARGUMENTS

The Chapmans argue that:

I. The trial court committed reversible error by receiving into evidence, matters which were parol and extrinsic to the written agreement entered into between Appellee and Siefers.

II. The trial court erred below by allowing Appellee and Siefers to reform their agreement.

III. The trial court erred in failing to recognize the strength and validity of Appellants' right of preemption over the sale of tract "B".

MONY responds that:

I. The specific findings of the trial court are presumed correct.

II. Answering arguments [I] and [II] of Appellants' brief, Appellee contends that the trial court committed no error in receiving parol evidence as to the MONY/Siefers contract.

A. The parol evidence rule does not exclude evidence which does not tend to vary or contradict the written instrument.

B. The parol evidence rule is inapplicable where the writing referred to is not relied upon as the basis of the action, but is a mere collateral instrument of evidence.

C. The parol evidence rule applies only where the controversy is between parties to the instrument sued upon.

III. The trial court recognized the appellants' right of first refusal.

## STANDARD OF REVIEW

This court has often stated its standard for reviewing cases on appeal. At the standard's crux, the trial court's findings are presumed correct and will stand unless clearly erroneous or inconsistent with the evidence or contrary to the great weight of the evidence. *Roberts v. Vilos*, 776 P.2d 216, 217 (Wyo.1989).

## DISCUSSION

The parties go to great though unnecessary lengths to inform this court on the subject of parol evidence. We need not, and do not, consider these issues. The trial court committed clear error in finding that MONY received an offer on the 22.6 acre tract. There was no offer. Without an offer at a fixed price the preemptive right holders had no occasion to exercise their right of first refusal. Consequently, they could not and did not waive that right. However, for the same reason, it is also true that the Chapmans cannot require specific performance by MONY. By entertaining Siefers' offer for the larger parcel, MONY did not express an intention to sell Tract B, which intention is the stimulus that would breathe life into the Chapmans' preemptive right and provide grounds for specific performance.

*Preemptive Right, or Right of First Refusal*

It is clear from the language of the 1984 Contract for Deed executed by Fullerton, the Chapmans and MONY that the Chapmans hold a right of first refusal, or preemptive right, on Tract B. Paragraph 10. *Additional Covenants*, sub f. states, "[a]s part of this agreement, and for the consideration received herewith, Seller will give Buyers the first option to buyer [sic] and first right of refusal to match any future offers on the approximately 20 acres of irrigated farm land that was part of the original 40 acre tract with the farm house, more particularly described as follows: [Tract B]." This language expresses a right of first refusal as we characterized it in *Hartnett v. Jones*, 629 P.2d 1357, 1362 n. 1 (Wyo.1981): "A presumptive right gives a privilege to purchase on a condition precedent which is the formulated desire of the owner to sell, and frequently the holder of the right must purchase at a price established by negotiations with a third party." As applied to these facts, MONY's formulated desire to sell would be its intent to sell Tract B at a price fixed by a third party offer and expressed by its delivery of the complete terms of the offer to the Chapmans.

 We agree with the view that when the condition precedent of the owner's intention to sell is met the right of first refusal "ripens" into an option and contract law pertaining to options applies. *Myers v. Lovetinsky*, 189 N.W.2d 571, 576 (Iowa 1971); Note, *Protecting the Preemptor: Real Property Right of First Refusal in Light of Gyurkey v. Babler*, 19 Idaho L.Rev. 277, 278 (1983). This ripening has important consequences for the preemptive right holder. When properly notified of an offer, the right holder must exercise its option or it waives its right of first refusal. Ripening also permits the right holder to enforce its right by requiring specific performance. Note, *supra*, at 278. However, until the right has been transformed into an option, there can be no waiver, and specific performance is not available.

*Waiver or Defeat of Preemptive Right*

 MONY's assertion, adopted by the trial court, that the Chapmans waived their preemptive right by failing to exercise it in

response to Siefers' "offer" is incorrect. Siefers' only offer was for 273 acres, of which Tract B was a small part. Siefers and MONY tried to reform their agreement to place a value on Tract B, but did not generate a new bona fide offer in the process. The condition precedent triggering exercise or waiver of the Chapmans' right did not occur because no price was ever set for that property by third party negotiation and, as a result, there was no offer for Tract B for the Chapmans to match. Consequently, their right is still valid, remaining in a sort of suspended animation until occurrence of the condition precedent, MONY's intention to accept a bona fide offer for the 22.6 acre tract.

■ It is not sufficient that an offer was made on a larger tract including the burdened property. The great majority of courts that have addressed this issue have held a preemptive right may not be defeated by a sale of the property burdened by the right as part of a larger tract. *Thomas & Son Transfer Line, Inc. v. Kenyon, Inc.,* 40 Colo.App. 150, 574 P.2d 107, 112 (1977); *Gyurkey v. Babler,* 103 Idaho 663, 667, 651 P.2d 928, 932, 34 A.L.R.4th 1199 (1982) and citations therein; *Saab Enterprises v. Wladislaw Wunderbar,* App.Div., 554 N.Y. S.2d 657, 658 (1990). *Contra, Crow–Speiker No. 23 v. Robert Helms Construction,* 103 Nev. 1, 731 P.2d 348, 350 (1987). Any other result is necessarily unacceptable because "[t]o allow the owner of the whole to by-pass the optionee merely by attaching additional land to the part under option would render nugatory a substantial right which the optionee had bargained for and obtained." *Guaclides v. Kruse,* 67 N.J.Super. 348, 170 A.2d 488, 495 (1961). Agreeing that the preemptor's right should be secured against this maneuver, we endorse the general rule.

*Specific Performance*

■ The absence of an offer cuts both ways, so that the Chapmans' complaint seeking specific performance must fail as well. Siefers made one offer to purchase 273 acres for $75,000.00. There is no evidence that Siefers or anyone else made an offer specifically for Tract B, much less one at the proportional price the Chapmans contend for. Phillips' letter to the Chapmans simply describes the values Siefers placed on irrigated land and on dry pasture in arriving at her $75,000.00 offer for the larger parcel. It says nothing about a price she was willing to pay for Tract B. There was no third party offer that established a definite price for Tract B. Consequently the Chapmans' right has not been converted into an option and they cannot obtain specific performance. See *Lovetinsky,* 189 N.W.2d at 576.

The general rule here is that "[a]n attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee the right to purchase the same." *Guaclides,* 170 A.2d at 493. This protects the owner from making a sale he did not desire and from problems and potential inequities which may result from deriving a value for the smaller burdened tract by allocation, either proportionally as the Chapmans desire, or by some sort of judicial determination of market value. *Pantry Pride Enterprises, Inc. v. The Stop & Shop Companies,* 806 F.2d 1227, 1230 (4th Cir.1986); and *Guaclides,* 170 A.2d at 494.

■ Beyond the question of offer, there is also no evidence that MONY intended to sell Tract B at the Chapmans' proportional price. To require specific performance on the 22.6 acre tract for $5,992.58 would compel disposal of the preempted tract though MONY never expressed the intent to sell it for that amount. It would require judicial reconstruction of the parties' contract. *Lovetinsky,* 189 N.W.2d at 576; and *Guaclides,* 170 A.2d at 493. Until MONY evidences its intention to accept an offer made specifically for Tract B at a fixed price, the Chapmans' preemptive right has not ripened into an option and they are not entitled to specific performance.

*Remedies*

■ We are left with the question of an equitable remedy. Although this court has not addressed possible solutions to this

problem, other jurisdictions have, and we take guidance from those decisions. Annotation, *Option to Purchase Real Property as Affected by Optionor's Receipt of Offer For, or Sale of, Larger Tract Which Includes the Optioned Parcel,* 34 A.L.R. 4th 1217 (1984). The decisions have discussed three remedies for preemptive right holders in the Chapmans' circumstances:

1) Some have granted specific performance at values set by the courts; *Thomas & Son Transfer,* 574 P.2d 107; *Berry–Iverson Co. of North Dakota, Inc. v. Johnson,* 242 N.W.2d 126 (N.D.1976); *Brenner v. Duncan,* 318 Mich. 1, 27 N.W.2d 320 (1947).

2) The majority have elected to return the parties to the status quo ante and require a bona fide offer on the smaller tract before the right may be exercised or considered waived; *Gyurkey,* 651 P.2d 928; *Lovetinsky,* 189 N.W.2d 571; *Guaclides,* 170 A.2d 488.

3) At least one has granted monetary damages. *Anderson v. Armour & Co.,* 205 Kan. 801, 473 P.2d 84 (1970).

In light of our preceding discussion we align ourselves with the majority of jurisdictions as a matter of both logic and equity. It is undesirable for a court to reform the contract by placing a value on the property. If at all possible that should be left to the parties and the market they choose to contract in. Monetary damages are not necessary where the parties may be readily restored to their former positions without suffering irreparable harm. Returning the parties to the positions they occupied before attempted sale of the larger parcel recognizes their agreement and provides the opportunity for its performance without judicial intrusion into establishment of the price term of any desired sale.

### CONCLUSION

The parties will be returned to their respective positions before the attempted sale to Siefers. The Chapmans' right of first refusal has not been waived, but remains in an unripened or suspended state, awaiting the energizing spark provided when the condition precedent of intent and offer is met. MONY is contractually bound to honor the right when it does receive an offer it wishes to accept for Tract B. On the other hand, until their preemptive right is transformed into an option as the result of a bona fide offer the Chapmans cannot compel specific performance.

Reversed and remanded, with direction that MONY be enjoined from selling Tract B except in response to a bona fide offer for that 22.6 acres, and only after presenting the complete terms of the offer to the Chapmans and giving them adequate opportunity to exercise their preemptive right.