James K. RAYMOND, Appellant (Plaintiff),

v.

Donald M. STEEN; and Schaub & Gueck Enterprises, Inc., a Nebraska corporation, Appellees (Defendants).

No. 93–64.

Supreme Court of Wyoming.

Oct. 3, 1994.

Michael E. Warren, Sawyer & Warren, Torrington, and Donn C. Raymond, Gering, NE, for appellant.

James A. Eddington, Jones, Eddington & Weaver, Torrington, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY *, and TAYLOR, JJ., and CARDINE, J.** Retired.

THOMAS, Justice.

The resolution of this case requires the application of our rules relating to summary judgment to the claim of James K. Raymond (Raymond) that he is entitled to have a description of certain lands in a contract for the sale of land reformed because of mutual mistake of fact. The land Raymond claims was incorrectly described was the subject of a right of first refusal by Raymond. In disposing of the case by summary judgment, the district court ruled the seller, Donald M. Steen (Steen), had not received a *bona fide* offer from a third party, and Raymond's right of first refusal never ripened into an

* Chief Justice at time of conference.

** Retired July 6, 1994.

option to purchase. The district court also ruled there was no mutual mistake, nor was there a meeting of the minds between Steen and Raymond prior to the execution of the written contract. The decision of the district court held no genuine issues of fact existed as to either of its alternative rulings, and Steen and Schaub & Gueck Enterprises, Inc. (S & G) (the present record owner of the land) were entitled to judgment as a matter of law. We hold the record does disclose genuine issues of fact with respect to: the substantive law of mutual mistake; the concept of a meeting of the minds prior to the formalization of the contract in writing; and whether Steen's conveyance to S & G was intended to evade Raymond's right of first refusal. We reverse and remand the case for further proceedings.

Raymond, in his Brief of Appellant, states the issues in this way:

Was summary judgment properly granted by the lower court on the grounds that:

a. There was no genuine issue of fact as to a mutual mistake or that a meeting of the minds existed between plaintiff and defendant Steen prior to the written contract.

b. That since a purchase price was never conveyed by Steen to plaintiff, the plaintiff's first right of refusal could not ripen into an option to purchase.

Steen and S & G say in the Brief of Appellees that the issues are:

1. Did the lower court correctly find that there were no genuine issues of fact in that defendant Don Steen (hereinafter "Steen") never received a bona fide offer from a third party, never conveyed any offer or purchase price to the plaintiff and plain-

tiff's first right of refusal never ripened into an option to purchase defendant Steen's real estate?

2. Did the lower court correctly grant defendants' summary judgment on plaintiff's claim for Reformation of Contract?

The original transaction that leads to the issues here involved the purchase by Raymond of 120 acres of land from Steen. The purchase of that tract of land was negotiated between Raymond and Steen's real estate agent. The contract was reduced to writing after its negotiation and, on February 14, 1987, Raymond and Steen executed the contract, which was entitled **"AGREEMENT"** and included the following paragraph:

13. *FIRST RIGHT OF REFUSAL:* [1] It is further agreed that in the event the Seller should receive a bona fide offer from a third party to purchase the following-described property, to-wit:

*Township 22 North, Range 62 West of the 6th P.M. Goshen County, Wyoming*

Section 28: W½SW¼NE¼

the terms of which are acceptable to Purchaser, on or before December 19, 1987, the Seller agrees to grant and give to the Purchaser the first right to purchase said property upon the same and identical terms and Purchaser shall have a period of ten (10) days from and after receipt of such notice from the Seller in which to accept the same in writing. This first right of refusal or to purchase shall automatically terminate and be cancelled as of December 19, 19897.[2]

In bringing this action, Raymond's fundamental contention is that the property subject to the right of first refusal[3] should have

---

1. While Paragraph 13 of the AGREEMENT is entitled "FIRST RIGHT OF REFUSAL," we think it would be easier to describe this paragraph as a "right of first refusal."

2. Subsequent to the original signing and acknowledgement of the contract, the 8 in 1987 was changed to 9 amending the contract to read 1997. Both Raymond and Steen initialed the change.

3. The right of first refusal is different from an option to purchase. An option to purchase generally affords the optionee the right to purchase the property at a set price during all or a part of

the agreement. A right of first refusal clause in an agreement requires the grantor of the right, when and if he desires to sell the property, to offer the property first to the grantee of the right at the same price offered by the third person. If the grantee refuses to meet the *bona fide* purchase offer of the third person, the grantor of the right can then sell the property to the third person. The grantor must give some notice to the grantee of his intention to sell and the terms of the offer. Thomas J. Goger, Annotation, *Landlord and Tenant: What Amounts to "Sale" of Property for Purposes of Provision Giving Tenant Right of First Refusal if Landlord Desires to Sell,* 70 A.L.R.3d 203 (1976).

been described in Paragraph 13 as the SW¼ NW¼NE¼ and the NW¼SW¼NE¼, all in Section 28. The record discloses that the property to which Raymond wanted the right of first refusal to apply has peculiar value for purposes of a wild goose hunting pit adjacent to the Bump–Sullivan Reservoir in Goshen County used to take Canada geese.

A review of the contentions of the parties is an appropriate prelude to the resolution of the issues. Raymond essentially argues genuine issues of material fact are present in this case that make summary judgment inappropriate. He sought reformation of the legal description relating to the twenty acres of land to which he held a right of first refusal. To establish a meeting of the minds concerning the property purported to be subject to that right of first refusal, he relies upon the apparent authority of the real estate agent and asserts the contract, as drafted and executed, contained a mutual mistake of fact involving the correct description. Raymond then contends Steen breached the contract. His prayer is for specific performance and damages for lost profits. Further, he claims tortious interference with the contract by Steen's co-defendant, S & G.

Raymond's arguments are countered by Steen and S & G. Their position is that Steen never received a *bona fide* offer from a third party to purchase any twenty acres subject to Raymond's right of first refusal; Steen never received any purchase price for the subject property; and Raymond failed to accept offers to sell him the property. In addition, Steen and S & G argue that Raymond did not pay consideration for the right of first refusal; Raymond is bound by the terms of his written contract with Steen; the only mistake was Raymond's unilateral mistake, which is not sufficient for reformation of the contract; and there was never a meeting of the minds between Steen and Raymond with respect to the twenty acres that was to be subject to the right of first refusal, except for the twenty acres described in the written agreement. Furthermore, Steen and S & G contend Steen had no knowledge of any provision for a right of first refusal until he came to the closing to execute the February 14, 1987 agreement; Steen did not agree with Raymond to include the claimed property as the real property subject to the right of first refusal, and Raymond was inexcusably negligent in executing the agreement on February 14, 1987, which contains the alleged misdescription.

The record discloses that, after the Agreement was made between Steen and Raymond, Dan Gueck and Gordon Schaub, as individuals, signed an offer to Steen to purchase ninety-five acres of real property. After that offer, Steen offered to transfer 140 acres to a corporation not yet in existence. Raymond stated he advised Schaub of his right of first refusal with respect to the twenty acres which were, in fact, included with additional land conveyed by Steen to S & G on May 27, 1987. The consideration for that transfer was the issuance of stock in S & G. That warranty deed included:

The North Half of the Southeast Quarter (N½SE¼) and the Northeast Quarter (NE¼) less a five (5) acre tract owned by Nye, Schaub, Gueck and Tripple in Section Twenty-eight (28), Township Twenty-two (22) North, Range Sixty-two (62) West of the 6th P.M. in Goshen County, Wyoming.

Raymond stated he was advised of this conveyance, but he was given no opportunity to purchase the twenty acres subject to his right of first refusal. He acknowledges the opportunity to purchase a larger tract of ninety-five acres, which included the twenty acres of land.

Three years later, Steen and S & G entered into a Partial Stock Redemption Agreement. That document provided S & G would purchase ninety-nine shares of Steen's stock for $20,000 and grant him a hunting lease for one day a week during the hunting season for a term of ten years. Interestingly enough, that agreement also provided for indemnification by Steen in the event of any lawsuit by Raymond respecting the twenty acres.

Both Steen and S & G, as defendants, sought to have Raymond's action resolved by a summary judgment. The trial court granted summary judgment in favor of the defendants. Raymond then took his appeal from that summary judgment.

■ We will uphold a summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Wyo.R.Civ.P. 56(c). We have held that summary judgment is appropriate in cases involving contracts when the language of the agreement is plain and unequivocal. *Flying J, Inc. v. Booth*, 773 P.2d 144, 148 (Wyo. 1989); *Dudley v. East Ridge Dev. Co.*, 694 P.2d 113, 117 (Wyo.1985). The interpretation of an unambiguous contract is a question of law and, for that reason, summary judgment is appropriate with respect to disputes relating to unambiguous contracts. *Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 703 (Wyo. 1994); *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo.1993); *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 651 (Wyo.1989). Summary judgment is a legally appropriate remedy because it eliminates formal trials when only questions of law are presented. *Bryant v. Hornbuckle*, 728 P.2d 1132, 1135 (Wyo.1986).

So far as our review of summary judgments is concerned, we recently quoted and reaffirmed our approach in *Kilmer v. Citicorp Mortgage, Inc.*, 860 P.2d 1165, 1167 (Wyo.1993) (quoting *Wagner v. First Wyoming Bank, N.A. Laramie*, 784 P.2d 224, 226 (Wyo.1989)), where we said:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. (Citations omitted.)

■ We will address inversely the two premises that the district court relied upon in granting summary judgment. Raymond reminds us of *Crompton v. Bruce*, 669 P.2d 930 (Wyo.1983). The case was relied upon by the district court, and the critical articulation there is the requirements for reformation of a contract. We said:

> Reformation of a document requires three things: (1) a meeting of the minds— a mutual understanding between the parties—prior to the time a writing is entered into, (2) a written contract or agreement, (3) which does not conform to the understanding, by reason of mutual mistake. *Rainbow Oil Company v. Christmann*, Wyo., 656 P.2d 538, 544 (1982); *Pfister v. Brown*, Wyo., 498 P.2d 1243, 1244 (1972); *Russell v. Curran*, 66 Wyo. 173, 206 P.2d 1159, 1163 (1949); *State Bank of Wheatland v. Bagley Bros.*, 44 Wyo. 244, 11 P.2d 572, 589 (1932); *Grieve v. Grieve*, 15 Wyo. 358, 89 P. 569, 570 (1907); *Stoll v. Nagle*, 15 Wyo. 86, 86 P. 26, 28 (1906).

*Crompton*, 669 P.2d at 934.

■ As we address the concept of the meeting of the minds, we acknowledge that mutuality of assent, the quintessence of meeting of the minds, must be present for the formation of a contract. In *Anderson Excavating and Wrecking Co. v. Certified Welding Corp.*, 769 P.2d 887, 889 (Wyo.1988) (emphasis added), we said:

> A contract comes into being when there is a meeting of the minds concerning the terms of the agreement. *Jackson Hole Builders v. Piros*, 654 P.2d 120, 122 (Wyo. 1982). The existence of a contract depends upon the intent of the parties and **presents the trial court with a question of fact.** *United States ex rel. Farmers Home Administration v. Redland*, 695 P.2d 1031, 1036 (Wyo.1985).

Critical to a question of the meeting of the minds between Raymond and Steen is the actual or apparent authority of the real estate agent.

If the real estate agent had actual or apparent authority to offer a right of first refusal on the twenty acres of land in dispute, a meeting of the minds between Raymond and Steen could be found. In denying a meeting of the minds, Steen, in effect, contends the real estate agent had no such authority. The agent, however, agreed with Raymond that the right of first refusal attached to a different twenty acres than those actually described in the "AGREEMENT."

The agent stated he was Steen's authorized agent subject to Steen's ultimate authority to make changes in all contracts and to Steen's final approval. Steen asserted he did not authorize the right of first refusal with respect to the twenty acres Raymond and the real estate agent agreed is the correct property. Raymond said, however, he believed the agent had authority with respect to the right of first refusal, and he had no knowledge of any limitation on that authority. A genuine issue of a material fact exists with respect to the extent of the agent's actual authority or with respect to the apparent authority that he manifested to Raymond.

■ If the finder of fact should conclude that a meeting of the minds was present as to Raymond and Steen because of the agent's actual or apparent authority, a question remains as to whether a mutual mistake exists with respect to the description of the twenty acres. If the finder of fact concludes that there was a mutual mistake with respect to the property subject to the right of first refusal, instead of a unilateral mistake as Steen contends, reformation could be an appropriate remedy. When parties achieve a meeting of the minds, and the written agreement does not conform to that understanding because of mutual mistake, reformation is a proper equitable remedy. *Toland v. Key Bank of Wyoming,* 847 P.2d 549, 554 (Wyo. 1993) (citing *Gasaway v. Reiter,* 736 P.2d 749, 751 (Wyo.1987)) (quoting *Crompton,* 669 P.2d at 934). If the mistake of fact was simply a unilateral mistake on Raymond's part, then the agreement would be enforced as written.

We must reverse this summary judgment. Genuine issues of material fact exist as to whether there was a meeting of the minds between Raymond and the real estate agent and the extent of the real estate agent's actual or apparent authority.

■ Turning, then, to the first premise for the district court's determination, we must analyze whether Steen ever received an offer to purchase the twenty acres from a third party. In our sister state, Utah, a sale is made for purposes of a right of first refusal when there is a transfer for value of a significant interest in the subject property to a stranger who thereby gains substantial control over the subject property. *Prince v. Elm Inv. Co., Inc.,* 649 P.2d 820 (Utah 1982). We understand this definition to be limited to the transfer of the specific tract subject to the right of first refusal. That limitation would assure compatibility with the rules we articulated in *Chapman v. Mut. Life Ins. Co. of New York,* 800 P.2d 1147 (Wyo.1990).

■ We are satisfied the trial court did not apply *Chapman* correctly. It is true the rule in *Chapman* is that a right of first refusal is not triggered by an offer on a larger tract which includes the burdened property. Neither is a right of first refusal satisfied by an offer to the holder of the right to sell him a larger tract. Raymond could not pursue his right of first refusal by claiming it was triggered by an offer to purchase a larger tract. The remedy suggested in *Chapman,* assuming Raymond is successful with respect to reformation of the description, is that the parties be returned to their status quo. In this instance, the court could order that the property in dispute be returned to Steen's ownership until he should receive a *bona fide* offer to purchase only the property subject to the right of first refusal.

■ Further, with respect to that right of first refusal, if there was a *bona fide* offer from a third party without notice, then Raymond was entitled to an option to purchase at the established price. Raymond stated, contrary to other information from Schaub, that he had given Schaub specific notice of his right of first refusal on two occasions. Schaub's testimony is that he had no actual or constructive notice. A resolution of this dispute would permit the fact finder to conclude that, with Schaub's knowledge of the right of first refusal, the right could not be avoided by the transaction between Steen and S & G in which the subject property was placed beyond Steen's control by exchanging it for stock in the corporation. We cannot agree *Chapman* would justify a sham transaction designed to evade the right of first refusal.

We, therefore, discern genuine issues of material fact concerning whether the conveyance by Steen to S & G followed by the

repurchase of Steen's shares was a sham to circumvent Raymond's right of first refusal. The alternative determination would be that this was a *bona fide* capitalization of the corporation that resulted in S & G being a *bona fide* purchaser for value for the shares of stock issued to Steen. If that were the factual determination, Raymond would be limited to a claim for damages against Steen because the property would have passed from his control to the *bona fide* purchaser.

In summary, according to our standard for review of summary judgment, we identify multiple genuine issues of material fact with respect to the legal claims presented by Raymond in this case. The summary judgment granted by the trial court is reversed, and the case is remanded for further proceedings in accordance with our opinion.