Archibald B. KENYON, Jr., in his Capacity as Executor of the Last Will and Testament of Marguerite E. Boyle,

v.

Anne M. ANDERSEN.

No. 93–539–Appeal.

Supreme Court of Rhode Island.

April 10, 1995.

Thomas S. Hogan, East Providence, for plaintiff.

Roderick A. Cavanagh, Wakefield, for defendant.

## OPINION

MURRAY, Justice.

This matter is before the Supreme Court on appeal by the defendant, Anne M. Andersen (Andersen), from a Superior Court judgment quieting title which was rendered in favor of the plaintiff, Archibald Kenyon, Jr. (Kenyon), in his capacity as executor of the last will and testament of Marguerite E. Boyle (Marguerite). For the reasons set forth below, we affirm the judgment. The following facts are gleaned from an agreed statement of facts submitted by the parties.

On August 23, 1930, James and Mary Kingston (James, Mary, or the Kingstons) executed a warranty deed conveying real property located on Fifth Avenue in the town of Narragansett to Owen Boyle and his mother, Ellen Boyle (Owen, Ellen, or the Boyles), as joint tenants. On the same day, the Boyles executed a mortgage deed to the Kingstons to secure the payment of $3,000 for which the mortgage deed had been given. Both the warranty deed and the mortgage deed were recorded on September 5, 1930.[1] The parties also executed a document entitled "Agreement" which set forth the terms of payment for the $3,000 mortgage and further gave to the Kingstons a right of first refusal to purchase the property in the event that the Boyles decided to sell it. The agreement provided in relevant part as follows:

> "And furthermore, we, the said mortgagors, for ourselves and for our heirs, executors, administrators and assigns, hereby

---

1. All recorded documents referred to in this opinion were recorded in the land evidence records for the town of Narragansett.

covenant with the said mortgagees and their executors, administrators and assigns, that in the event said mortgagors decide to sell said premises at any time, then said mortgagors shall offer the same to said mortgagees, their executors, administrators and assigns, before offering said premises to any other party, and said offer to sell to said mortgagees shall be at as reasonable a price as said premises may be offered to any other party."

The agreement was not recorded until January 16, 1967.

On August 18, 1935, Ellen died and by virtue of the joint tenancy Owen became the sole owner of the property. Subsequently Owen's wife, Marguerite, became a joint tenant in the property with Owen pursuant to the execution of a warranty deed, which was duly recorded.

Thereafter, James died and on May 19, 1943, Mary, individually and as the administrator of the estate of James, assigned to her daughter, Jennie Loughery (Loughery), whatever right she and James had in the August 1930 agreement. This assignment was recorded on May 25, 1943.

The mortgage referred to above was discharged on July 23, 1947; the discharge was recorded on July 31, 1947.

Owen died on March 1, 1966, and by virtue of the joint tenancy, Marguerite became the sole owner of the property.

On October 15, 1984, Marguerite entered into a written agreement with Solveig LaPorte (LaPorte) to sell the property for the sum of $50,000. A real estate commission was to be paid to South County Realty, Inc. The agreement made no reference to, nor was it subject to, the August 1930 agreement containing the right of first refusal.

Loughery died on October 22, 1964, and her two daughters, Irene Eckersen (Eckersen) and Andersen, became entitled to whatever rights Loughery had pursuant to the terms of the August 1930 agreement.

On January 29, 1985, Kenyon, as attorney for, and on behalf of, Marguerite, offered to sell the property to Eckersen and Andersen for the sum of $50,000. The time limitation for acceptance of the offer was February 15, 1985. Prior to the expiration of the offer, Eckersen and Andersen, through their attorney, notified Kenyon that they would purchase the property for the sum of $47,000, which they contended would be the net price received by Marguerite under the agreement with LaPorte after deducting a real estate commission of $3,000.

Marguerite died on June 18, 1985. She did not convey the property to LaPorte, Eckersen and Andersen, or any other purchaser. Following Marguerite's death, Kenyon was appointed the executor of Marguerite's estate, and in that capacity Kenyon offered in writing to sell the property to Eckersen and Andersen for the sum of $65,000, which had been offered to him by a potential buyer. Kenyon enclosed a quitclaim and release form with the offer to be executed by Eckersen and Andersen in the event the offer was rejected. Eckersen and Andersen responded that they would exercise their right of first refusal to purchase the property for the sum of $47,000. Eckersen subsequently assigned all her rights under the August 1930 agreement to Andersen.

As a result of Kenyon's inability to obtain an executed release and quitclaim from Andersen, Kenyon contends, he is unable to establish title to the property to the satisfaction of would-be purchasers. Therefore, on February 2, 1987, Kenyon filed a complaint in the Superior Court, seeking to quiet title to the property and to declare title vested in the estate of Marguerite pursuant to the provisions of the Uniform Declaratory Judgments Act, G.L.1956 (1985 Reenactment) chapter 30 of title 9.

The parties agreed to submit the matter to the trial justice for his determination upon a second amended complaint filed by Kenyon on September 28, 1988. The parties further agreed to submit the matter to the trial justice solely on the basis of their written briefs without the taking of testimony.

The trial justice rendered a written decision on June 23, 1993, in which he opined that the right of first refusal contained in the August 1930 agreement was extinguished when the mortgage was discharged in 1947. The trial justice's decision was premised

upon the specific language contained in the agreement which persuaded him to find that the right of first refusal contained in the agreement was given as part security for the mortgage debt. Accordingly, the trial justice concluded that the right of first refusal is null and void and does not constitute a cloud on the title to the property.

Judgment was entered in the Superior Court on July 26, 1993, declaring the right of first refusal contained in the August 1930 agreement null and void and of no further effect. Pursuant to the judgment, title to the real estate was quieted, and the trial justice ordered the August 1930 agreement removed from the land evidence records. Andersen filed a timely appeal from entry of the judgment.

The issue before us is whether the trial justice erred in finding that the right of first refusal contained in the August 1930 agreement is no longer valid and enforceable.

Andersen avers that the trial justice erroneously found that the right of first refusal was extinguished upon the discharge of the mortgage. It is Andersen's contention that the August 1930 agreement containing the right of first refusal is valid and enforceable because it was executed as separate and distinct from the mortgage. Further, Andersen argues, the right of first refusal is valid because it does not violate the rule against perpetuities, the statute of frauds, or the doctrine of unrestrained alienability.

Kenyon counters that the right of first refusal (1) terminated when the mortgage was discharged on June 23, 1947, (2) terminated on February 12, 1985, when Eckersen and Andersen rejected Marguerite's offer to sell the property for $50,000 and responded with a counteroffer of $47,000, (3) is a nullity because it was not included in the mortgage deed, and (4) violates the rule against perpetuities, the statute of frauds, and the provision of G.L.1956 (1984 Reenactment) § 34–4–23.

■ The parties concede that the provision at issue contained in the August 1930 agreement is properly characterized as a right of first refusal and not an option to purchase. We have described the right of first refusal as an "independent privilege." *Hood v. Hawkins*, 478 A.2d 181, 185 (R.I. 1984) (quoting *Butler v. Richardson*, 74 R.I. 344, 349, 60 A.2d 718, 721 (1948)). "A right of first refusal 'does not give the [possessor of it] the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the [right of first refusal] at the stipulated price.'" *Id.* (quoting *Mercer v. Lemmens*, 230 Cal.App.2d 167, 170, 40 Cal.Rptr. 803, 805 (1964)).

■ After making a thorough review of the record in this case, we are of the opinion that the trial justice was correct in finding that the right of first refusal given to the Kingstons terminated when the mortgage was discharged. The circumstances surrounding the execution of the August 1930 agreement, including the execution of the warranty deed, together with the execution of the mortgage deed, persuade us that the August 1930 agreement was part of the consideration given for the sale of the property.

Moreover, as articulated by the trial justice in his decision, the specific language of the agreement itself buttresses the conclusion that when the mortgage was discharged, the right of first refusal would no longer be in effect. For example, throughout the text of the agreement, the Boyles and the Kingstons are referred to as the "mortgagors" and "mortgagees," respectively. Further, the agreement delineates the obligations of the Boyles in regard to payment of the mortgage and outlines tax and assessment liability. It also requires the Boyles to maintain insurance on the property against loss by fire. It is our belief that these requirements support the trial justice's finding that the right of first refusal was not intended to survive beyond the discharge of the mortgage debt.

We note that although the warranty deed, the mortgage deed, and the agreement were executed contemporaneously on August 23, 1930, there apparently was no promissory note similarly executed on that date. We believe the absence of a promissory note is telling evidence which further supports the conclusion that the agreement was part of

the consideration given by the Boyles for the purchase of the property.

We also find it significant that in the agreement itself, the right of first refusal passes to the mortgagor's heirs; however, the benefit of such right did not pass to the mortgagees' heirs. We are of the opinion that the fact that the mortgagees' heirs did not acquire the same right constitutes evidence that the right was exclusively given to the Kingstons as part consideration for the mortgage.

We are persuaded on the basis of the foregoing that it is apparent that the agreement was not intended to continue beyond the term of the mortgage. It is our opinion that all the mortgagees' rights under the agreement were terminated upon full payment of the mortgage debt. To conclude otherwise would mean that the right of first refusal would continue indefinitely even after the mortgage was discharged in July 1947 and there were no longer such parties as a mortgagor and mortgagee. We find such a conclusion illogical and clearly not the intent of the parties.

Even if we were to assume that the right of first refusal survived beyond the discharge of the mortgage in July 1947, we nonetheless conclude that the failure of Eckersen and Andersen to accept Marguerite's initial offer to sell the property in 1985 for $50,000 resulted in a rejection of the offer.

■ We have noted that "a right of first refusal must be specific in regard to the price and other conditions of the sale or provide a means by which the conditions of sale, including the price, can be ascertained with certainty." *Doyle v. McNulty*, 478 A.2d 577, 579 (R.I.1984). However, in cases where no price is stated when the right is granted, the offer of the third party supplies the terms under which the right may be exercised. *See Radio WEBS, Inc. v. Tele–Media Corp.*, 249 Ga. 598, 292 S.E.2d 712 (1982).

■ In this case no purchase price was stated when the right was given in August 1930; therefore, the 1984 agreement between Marguerite and LaPorte supplied the terms under which the right could be exercised. Pursuant to the agreement, LaPorte agreed to buy the property from Marguerite for the sum of $50,000. Thus, under the terms of the August 1930 agreement, Marguerite was obligated to offer the property to Eckersen and Andersen at the price of $50,000.

Andersen has argued that since the agreement specified the payment of a broker's commission, the net amount Marguerite would receive was $47,000. Therefore, Andersen contends, she was entitled to exercise the right for the price of $47,000. We find this argument to be without merit since it is clear that LaPorte was willing to buy the property for $50,000. Moreover, although the agreement does state that a broker's commission was to be paid to South County Realty, Inc., the agreement is silent with respect to whether the commission was to be paid by LaPorte or Marguerite. The agreement is also silent with respect to the specific amount of the commission. In any event there is no evidence suggesting that the purchase price would be decreased. Thus, it is the purchase price and not the net amount to be received by Marguerite which defined the terms under which the right could be exercised. *See C. Robert Nattress & Associates. v. CIDCO*, 184 Cal.App.3d 55, 229 Cal.Rptr. 33 (1986) (exercise of right of first refusal contained in an offer of purchase was on same terms and conditions even though it did not contain the real estate commission). Since Eckersen and Andersen responded to Marguerite's offer with a counteroffer of $47,000, the original offer was rejected. *See* Restatement (Second) *Contracts* § 39(2) at 106 (1981).

We shall not address the remaining arguments raised by the parties since the result we have reached is tenable under either theory articulated above.

For these reasons, Andersen's appeal is denied and dismissed and the judgment appealed from is affirmed. The papers of the case are remanded to the Superior Court.