[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on Plaintiff's request for specific performance.[1] Plaintiff Joseph M. Brito (hereinafter "Brito" or "Plaintiff") is asking the Court to order the conveyance to him of certain real estate referred to as the Back Lots on which he holds a right of first refusal. Alternatively, Plaintiff is willing to purchase the Back Lots and the Hotel that Defendants intended to sell in their package deal with a third party. Defendants Belvedere Developers, LLC (hereinafter "LLC" or "Defendants"), Belvedere Hotel, Ltd. (hereinafter "Ltd." or "Defendants") and Center Development Corporation (hereinafter "Center" or "Defendants") oppose Plaintiff's request for specific performance and seek injunctive relief ordering Plaintiff to expunge from the public records Plaintiff's purported Notice of Exercise of Right of First Refusal.
 Facts and Travel
The parties in this case have stipulated to the pertinent facts. Plaintiff Brito is a Bristol, Rhode Island, businessman and real estate developer. Defendant Ltd. is a Rhode Island corporation with a principal place of business in Bristol, Rhode Island At all relevant times, the outstanding shares of Ltd. have been owned by Fred H. Barrows (Barrows) and Asterio H. Sousa, et ux., (Sousa), all of Bristol, Rhode Island, and John M. Whistler (Whistler) of Barrington, Rhode Island Defendant LLC is a Rhode Island limited liability company with a principal place of business in Bristol, Rhode Island At all relevant times, LLC's members have been Barrows, Sousa, Whistler, David Driver and Laura Driver, also of Barrington, Rhode Island Defendant Center is a New York corporation with Rhode Island contacts sufficient for the Court to have personal jurisdiction in this case. Center is wholly owned by William Hubbard of New York City, New York. Defendant Town of Bristol is a Rhode Island municipal corporation. The individual defendants are members of the Planning Board of the Town of Bristol and are only sued in their official capacity.
On December 17, 1997, LLC purchased real estate located at 423 Hope Street in Bristol, Rhode Island, known as Belvedere Hotel (formerly known as the Harriet Bradford Hotel), and identified as Lot 3 on Bristol Assessor's Plat 10 (the "Hotel"). LLC remains the record owner of the Hotel. LLC and Ltd. borrowed $308,000 from Brito for the purchase of the Hotel and gave Brito a promissory note (mortgage note) in that amount, secured by a mortgage on the Hotel and by a "Loan and Security Agreement and Assignment of Rents Leases." Ltd. and LLC were both jointly and severally liable, as makers, on the mortgage note and were both signatories to the Loan Security Agreement.
On September 21, 1999, Ltd. purchased Lots 81, 5, 7, 8, 9 and 10 of Plat 10 (the "Back Lots"). These lots are on the same block as the Hotel, and one lot abuts the Hotel. Also, on September 21, 1999, Ltd. and Brito entered into the Right of First Refusal ("ROFR"). LLC was not a party to the ROFR. That ROFR applies to the Back Lots and is good through December 31, 2005. On May 9, 2001, Brito executed a Partial Release of Right of First Refusal whereby he waived and released the ROFR with respect to the northerly portion of Lot 5 of Plat 10, which Ltd. then conveyed to a third party. Thereafter, the remaining southerly portion of Lot 5 was merged into Lot 81. The Brito mortgage on the Hotel was discharged on July 17, 2001, in connection with a refinancing of the Hotel.
In March 2003, Ltd. and LLC entered into a Purchase Agreement with Center Development. By letter dated May 13, 2003, LLC informed Brito that it had entered into an agreement with Center to develop the premises and adjacent parcels. LLC did not then furnish Brito with a copy of this agreement, but did request that he release his ROFR. Brito refused to release the ROFR. Accordingly, the transactions contemplated by the Purchase Agreement with Center did not close.
On August 1, 2003, Ltd. conveyed the Back Lots to LLC. As a result, LLC currently has title to both the Hotel and the Back Lots. The ROFR expressly provided that such a transfer from Ltd. to LLC was exempt from Brito's first refusal rights. Brito was provided with a copy of the Purchase Agreement with Center on September 8, 2003. By letter dated September 10, 2003, Brito made a written demand In Brito's letter, he acknowledges that he has first refusal rights in the Back Lots and not in any of the other assets included in the Purchase Agreement. Also on September 10, 2003, Brito recorded a Notice of Exercise of Right of First Refusal ("Notice") in the Bristol Land Evidence Records.
By letter dated October 2, 2003, LLC notified Brito that if he did not release the Notice of Exercise of Right of First Refusal by October 10, 2003, LLC would take appropriate court action to compel such release. In that letter, LLC maintained that the agreement with Center did not constitute an offer to purchase real estate that triggered Mr. Brito's ROFR and, thus, Brito's Notice was improperly filed. Additionally, LLC expressed its intent to continue its development plans without conveying any portion of the real estate to Center or to any other person. By certified letter dated October 15, 2003, the Planning Board asked certain questions of Center, who responded by letter dated October 17, 2003. That letter expressed Center's intent to execute a Subscription Agreement to become a member of Belvedere LLC with an initial interest of seventy-five (75%) percent once this litigation has been resolved.
Plaintiff has brought this action seeking specific performance of the Back Lots, or in the alternative, both the Back Lots and the Hotel. In opposition to Plaintiff's request for specific performance, Defendants are asking this Court to deny Plaintiff's request for specific performance and order Plaintiff to remove from the public records his Notice of Exercise of Right of First Refusal.
 Plaintiff's Position
Plaintiff argues that he is entitled to specific performance ordering the conveyance to him of the Back Lots based on his right of first refusal. Plaintiff asserts that LLC's and Ltd.'s offer to Center to purchase Plat 10, which was contingent upon Plaintiff's release of the ROFR, constituted an offer to sell that activated Plaintiff's right of first refusal. It is Plaintiff's contention that LLC and Ltd. cannot now retract that offer and conduct a transfer of the property between them when that right has already been realized, and Plaintiff seeks to act upon that right.
Furthermore, Plaintiff maintains that Defendants' position that the holder of the right of first refusal cannot compel his grantor to carve the encumbered parcel out of the larger tract and sell it to him is not applicable in this case. Here, Defendant Ltd. granted Brito a right of first refusal in all of its land and then agreed to sell the land to a third party, all of it encumbered by the ROFR. It is Plaintiff's contention that Defendant Ltd. is now trying to circumvent Plaintiff's ROFR by arguing that the encumbered parcel is part of a larger parcel, which includes the Hotel owned by LLC. Plaintiff asserts that this position cannot stand because at the time Ltd. and LLC entered the contingent Purchase Agreement with Center, the Back Lots and the Hotel had two different owners and, thus, were two separate parcels of land, one parcel of which was completely encumbered by Plaintiff's ROFR.
Plaintiff concedes that Defendant Ltd. might have a viable argument if Ltd. had conveyed the Back Lots to LLC prior to its contingent Purchase Agreement with LLC because then the encumbered parcel would have been part of a larger tract of land with a single landowner. Moreover, Defendant Ltd. would have been permitted to convey the encumbered parcel to LLC because under the terms of the ROFR, the right of first refusal does not apply to a sale or transfer between Ltd. and LLC and/or their stockholders or members. Here, however, Ltd. and LLC entered into the agreement with Center on March 2003, when the Back Lots and Hotel still had separate landowners. It was only on August 1, 2003, five months after Defendants entered into an agreement with a third party to purchase the land, that Defendant Ltd. conveyed the Back Lots to LLC, giving LLC title to all of the parcels now in controversy. Thus, Plaintiff argues that his ROFR was triggered by the agreement in March 2003, because Ltd. was prepared to sell all of its land to a third party, all of which was encumbered by Plaintiff's ROFR.
Moreover, Plaintiff asserts that Defendants' argument against awarding Plaintiff specific performance of the encumbered parcel is further weakened by the fact that Plaintiff is willing to purchase both the Back Lots and the Hotel on the same terms contemplated in the agreement. Thus, even if Defendants argue that the purchase of the Hotel on the terms offered by LLC was part of the consideration for Ltd.'s sale of the Back Lot, Plaintiff is willing to purchase both the Back Lots and Hotel for the same amount that it was being offered to Center.
 Defendants' Position
Conversely, Defendants argue that Plaintiff is not entitled to specific performance of the aforementioned parcel because Plaintiff's right of first refusal has not been activated. Defendants cite Aden v. Estate of Hathaway for the proposition that an agreement which is made contingent upon the ROFR holder's waiver of their right of "first privilege" does not trigger the right of first refusal. See Aden v. Estate of Hathaway,427 P.2d 333 (Colo. 1967). According to Defendants, when Plaintiff refused to waive its right, the prospective agreement between Defendants and Center became a nullity, as it made the Purchase Agreement impossible for the parties to perform.
Furthermore, Defendants contend that Plaintiff is not entitled to exercise his right of first refusal because the sale of the encumbered parcel was only offered within the context of a sale of a larger tract of land In support of its position, Defendants cite three cases, all of which stand for the proposition that a rightholder is limited to injunctive relief enjoining the sale of the burdened parcel when the owner decides to sell the encumbered parcel as part of a larger tract. See Sawyer v. Firestone,513 A.2d 36 (R.I. 1986); Aden, 427 P.2d 333; Gyurkey v.Babler, 651 P.2d 928 (Idaho 1982). Defendants argue that this view, espoused by a majority of courts and adopted by the Rhode Island Supreme Court in Sawyer, protects a landowner who does not want to sell the encumbered parcel separately. It is Defendants' position that Ltd. has never been willing to sell the ROFR parcel separately because doing so would undermine the entire condominium project.
Moreover, Defendants assert that Plaintiff is not entitled to specific performance of both the Back Lots and the Hotel as was contemplated in the prospective Purchase Agreement with Center. The Purchase Agreement has since been nullified because Plaintiff's ROFR does not extend to the Hotel. Thus, it is Defendants' contention that Plaintiff has no conceivable right to purchase the Hotel on the same terms as it was offered to Center and any such claim on the part of Plaintiff is without merit. Finally, Defendants argue that the transfer of shares between Ltd. and LLC is exempt from Plaintiff's ROFR, which is limited in numerous respects; thus, the corporate transactions between Defendants do not conflict with Plaintiff's right of first refusal. In order to continue their current business dealings, Defendants ask this Court to order Plaintiff to expunge from the public records Plaintiff's purported Notice of Exercise of Right of First Refusal.
 Discussion
The Rhode Island Supreme Court has described the right of first refusal as a privilege that "`requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the [right of first refusal] at the stipulated price'" Kenyon v. Anderson, 656 A.2d 963, 965 (R.I. 1995) (citing Hood v. Hawkins, 478 A.2d 181, 185 (R.I. 1984) (quotingMercer v. Lemmens, 230 Cal.App.2d 167 (1964)). In contrast to an option to purchase, a right of first refusal is entirely contingent upon the owner's choice to sell. See Kenyon,656 A.2d at 965. If the rightholder chooses to exercise the privilege, the rightholder is normally required to match the price and terms specified in the third party's offer. Bernard Daskal, Note, Rights of First Refusal and the Package Deal, 22 (Fordham Urb. L.J.) 461, 465 (1995). The right of first refusal serves two purposes: one, to discourage the sale of the burdened property to a purchaser who may use it in a fashion that is undesirable to the rightholder; and two, to afford the rightholder the opportunity to purchase the encumbered property if and when the owner decides to sell it. Daskal, supra, at 465-66.
Looking to the above definition and the reasons for employing a right of first refusal, this Court finds that the Purchase Agreement with Center constituted an offer to sell the burdened parcel. "A right of first refusal is a right to receive an offer, and the grantor's failure to or refusal to exercise the right constitutes a breach." Cipriano v. Glen Cove Lodge # 1458,B.P.O.E., 801 N.E.2d 388, 393 (N.Y. 2003). This Court agrees with Plaintiff that placing a contingency in a prospective Purchase Agreement, which seeks a release of the holder's right, in no way diminishes the owner's apparent intent to sell the encumbered land Moreover, under contract law the owner of the land has a duty to use good faith and his best efforts to acquire such a release in order to ensure that the prospective contract can be accomplished. The Rhode Island Supreme Court has stated that it interprets contracts including conditions precedent to "impose upon the party required to bring about the happening of that occurrence an implied promise to use good faith, diligence and best efforts to bring about that happening." Lacroix v.Walker, 819 A.2d 1244, 1246 (R.I. 2003) (quoting BradfordDyeing Ass'n, Inc. v. J. Stog Tech GmbH, 765 A.2d 1226, 1237
(R.I. 2001)). Though Brito's choice not to give the requested waiver may have made the prospective Purchase Agreement with Center a nullity, it certainly did not nullify Defendants' manifested intent to sell the larger tract of land to a third party if Plaintiff provided a release of his rights on the burdened parcel.
Thus, the sole issue before this Court is whether Defendants' contingent Purchase Agreement triggered Plaintiff's ROFR, and if so, the recovery to which Plaintiff is entitled. The majority of courts having addressed situations where an owner sells or attempts to sell property burdened by a right of first refusal as part of a larger package of properties have held that the right of first refusal is not activated in its traditional sense. Only one Court embracing this view takes the position that the rightholder's failure to enter into an agreement addressing the possibility of a package deal leaves the rightholder without any remedy. Crow Spieker #23 v. Helms Constr. Dev. Co.,731 P.2d 348, 350 (Nev. 1987); Daskal, supra, at 472-74. All other courts embracing this view hold that while a package deal does not trigger the right of first refusal in its traditional sense, such that the holder can purchase the property, the rightholder is entitled to injunctive relief, enjoining the sale of the burdened property. See e.g., Chapman v. Mut. Life Ins. Co.of New York, 800 P.2d 1147 (Wyo. 1990); Sawyer v. Firestone,513 A.2d 36 (R.I. 1986); Daskal, supra, at 475.
The Supreme Court of Wyoming provided two explanations for holding that injunctive relief is a more appropriate remedy than specific performance. See Chapman, 800 P.2d at 1151. The first reason is that no acceptable offer has been made for the encumbered parcel alone, and therefore the rightholder is incapable of exercising her privilege because there is no offer for her to match. See id. A second reason is that by the terms of the right of first refusal the owner is to remain in control of the price she is to receive for the burdened property, and with a package deal, the price the owner finds acceptable for the encumbered parcel itself remains unknown. See id.
According to the Court, the better remedy is to allow the rightholder to enjoin the owner from selling the burdened property until the owner receives an offer for the burdened tract alone, at which time the owner is required to give the rightholder an opportunity to match that offer. See id. at 1151-52.
Alternatively, a significant minority of courts have held that a package deal does activate the right of first refusal, entitling the rightholder to specific performance. The majority of courts adopting this view take the position that the rightholder is entitled to specific performance on the burdened property alone. See e.g., Berry-Iverson Co. of N.D., Inc.,v. Johnson, 242 N.W.2d 126, 134 (N.D. 1976); Brenner v.Duncan, 27 N.W.2d 320, 322 (Mich. 1947); Daskal, supra, at 480. If the rightholder chooses not to exercise his right, then the owner can continue with its sale of the larger package. Another view, embraced by at least one court, is that in the event of a package deal the rightholder is entitled to specific performance on the entire package. See Capalongo v. Giles,425 N.Y.S.2d 225, 228 (N.Y. Spec. Term 1980); Daskal, supra, at 487-88. If the owner sells the encumbered parcel as part of a package of properties, the owner is required to provide the rightholder with an opportunity to exercise her privilege and preempt the sale of the entire package. See Capalongo,425 N.Y.S.2d at 228; Daskal, supra, at 487-88. Under this approach, the rightholder will only be able to preserve the ROFR if he is willing and able to match the third party's offer for the entire package of properties. See Capalongo, 425 N.Y.S.2d at 228; Daskal, supra, at 487-88. The problem with this latter approach is that it forces the rightholder to either purchase an entire tract of land that he may not be able to afford or forego his privilege; thus, giving the rightholder no opportunity to purchase the encumbered parcel on terms consistent with his right of first refusal. See Daskal, supra, at 490-91.
In Brenner v. Duncan, the Supreme Court of Michigan explained the reasoning for its conclusion that awarding specific performance on the burdened parcel is the proper remedy.Brenner, 27 N.W. at 322 (Mich. 1947). According to theBrenner Court, to do otherwise would unfairly compromise the rightholder's privilege because "[a] party who prevents fulfillment of a condition of his own obligation commits a breach of contract . . . and cannot rely on such condition to defeat his liability." Id. (quoting Bewick v. Mecham, 156 P.2d 757, 761
(Cal. 1945)). The Brenner Court went on to explain that under the terms of the agreement, the owner had a duty to fix a specific sum for the burdened parcel and give the rightholder the opportunity to purchase the parcel at that figure. See id.
"Her failure to do so constituted a breach of contract, making acceptance of the option by plaintiffs impossible. This situation, resulting from her own breach, may not be relied upon as a defense to plaintiff's suit." Id.
Following the line of cases that have held that a package deal does not trigger the right of first refusal in its traditional sense, the Rhode Island Supreme Court, in Sawyer, held that a ROFR holder may enjoin the proposed sale of a larger tract of land that includes the parcel subject to the right of first refusal. Sawyer, 513 A.2d at 39-40. The Sawyer Court embraced the reasoning applied by the New Jersey Superior Court which declared: "`To allow the owner of the whole to by-pass the [right of first refusal] merely by attaching additional land to the part under option [of first refusal] would render nugatory a substantial right which [was] bargained for and obtained." Id.
at 39 (quoting Guaclides v. Kruse, 170 A.2d 488, 495
(N.J.Super.Ct. App. Div. 1961)). At the same time, the Sawyer Court noted that the holder of such a right may not force a separate sale of the land when the prospective agreement with the third party dealt with a larger tract of land Sawyer,513 A.2d at 40.
What makes this case significantly different from Sawyer and other cases decided under this analysis is that the larger parcel at issue in this case had two separate landowners at the time of the contingent Purchase Agreement. Plaintiff correctly points out that at the time the contingent Purchase Agreement was entered into, Ltd. did not own any land that was not encumbered by the ROFR. Ltd. was attempting to sell the encumbered parcel as part of the sale of a larger parcel that it did not own, thereby circumventing Plaintiff's right to purchase the encumbered parcel when Defendant Ltd. decided to sell to a third party. This Court finds that this agreement, which was entered into before the encumbered parcel was conveyed to LLC, directly triggered Plaintiff's right of first refusal, thereby entitling Plaintiff to purchase the encumbered parcel. Denying Plaintiff specific performance of the encumbered parcel would directly undermine the right of first refusal and render it worthless in a case like this where two separate companies could trade among themselves to literally obliterate the holder's right of first refusal. While it is true that there is an exemption in Plaintiff's ROFR for transfers between Ltd. and LLC, the contingent Purchase Agreement with Center was entered into before any transfer occurred.
Moreover, in contrast to the plaintiffs in Aden andGyurkey, who were only willing to purchase the encumbered parcel, Plaintiff in the present case is offering to purchase the Back Lots and the Hotel on the same terms as Center. Thus, Plaintiff is willing to buy more than his ROFR requires upon activation in order to exercise his ROFR on terms that are acceptable to Defendants. This Court can only infer that the reason for the Sawyer Court's repudiation of the notion of granting specific performance as relief is that an owner's willingness to sell his entire tract of land does not reflect a willingness to sell only the encumbered parcel. "An attempt to sell the whole may not be taken as a manifestation or an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee the right to purchase the same." Aden, 427 P.2d at 334 (citing Guaclides,170 A.2d at 493). However, where the holder is willing to meet the same terms as the third party by buying all of the land contemplated in the agreement, no such distinction can be drawn.
Furthermore, the two most logical reasons for not affording specific performance as a remedy are that 1) there is no offer for the rightholder to match, and 2) the owner should be able to establish the price for the burdened parcel, which do not apply in this case. Here, the burdened parcel was its own tract of land and the price for that parcel was specified in the contingent Purchase Agreement. See Pantry Pride Enter., Inc. v. Stop Shop Cos., Inc., 806 F.2d 1227, 1230 (4th Cir. 1986) (commenting that specific performance was the more appropriate remedy where the parties to the sale assigned separate valuations to the personalty and leasehold interests and, therefore, the problems commonly associated with awarding specific performance in such cases were not present). In the Purchase Agreement with Center, the parties agreed that the price for the Hotel would be $450,000.00, whereas, the price for the Vacant Parcel and the Carriage Hotel Parcel, which make up the Back Lots, would be $495,000.00, for a total of $945,000.00. Thus, it is clear from the agreement that Defendant Ltd. was willing to sell the encumbered parcel to a third party for a sum of $495,000.00, a figure the Plaintiff has already stated that he is willing to match.
Additionally, in the present case the encumbered parcel in question was not part of a larger tract of land, and therefore, Defendants' reliance on Sawyer is not persuasive. Defendant Ltd. failed to convey the Back Lots to LLC before entering into an agreement with a third party, and at the time Defendants requested Plaintiff's release, the Back Lots and the Hotel were separately owned tracts of land Owners should not be permitted to attempt to sell their encumbered parcels to third parties by joining with other landowners, and then be able to deny the rightholder an opportunity to exercise his right by arguing that the encumbered parcel was part of a larger package. Believing that such an arrangement would seriously impede the right of first refusal, this Court finds that Plaintiff's ROFR was triggered by the Purchase Agreement with Center.
 Conclusion
Based on the above findings, this Court concludes that Plaintiff is entitled to specific performance, allowing Plaintiff to purchase the Back Lots from Defendants on the same terms as it was offered to Center Development in the March 2003 contingent Purchase Agreement. Accordingly, this Court denies Defendants' motion for injunctive relief ordering Plaintiff to expunge his Notice of Exercise of Right of First Refusal from the public records.
[1] In their memoranda to the Court, the parties to this case characterize the remedy Plaintiff seeks as a motion for preliminary injunction and declaratory relief, barring LLC and Ltd. from selling the encumbered parcel to Center Development and ordering them to sell it to him instead. Courts addressing situations where an owner attempts to sell property encumbered by a right of first refusal as part of a package deal refer to one type of remedy as injunctive relief and another type of remedy as specific performance. See e.g., Pantry Pride Enter., Inc. v.Stop Shop Companies, Inc., 806 F.2d 1227, 1229 (4th Cir. 1986); Aden v. Hathaway, 427 P.2d 333 (Colo. 1967); Brenner v.Duncan, 27 N.W.2d 320, 322 (Mich. 1947). Injunctive relief entitles the rightholder to an order enjoining the owner from selling the encumbered parcel to a third party, whereas specific performance entitles the rightholder the opportunity to purchase the encumbered parcel. As it is undisputed in the present case that Plaintiff seeks to purchase the encumbered parcel, this Court refers to the remedy sought by Plaintiff as a request for specific performance.