**In re NEW ERA RESORTS, LLC, Debtor.**

**Bankruptcy No. 99–31097.**

United States Bankruptcy Court, E.D. Tennessee.

Aug. 18, 1999.

C. Mark Troutman, McCord, Troutman & Irwin, P.C., Knoxville, Tennessee, for the debtor.

James A. McIntosh, Suzanne H. Bauknight, John H. Rowland, Baker, Donelson, Bearman & Caldwell, Knoxville, Tennessee, for O'Charley's, Inc.

Michael H. Fitzpatrick, Jenkins & Jenkins Attys., PLLC, Knoxville, Tennessee, for Jon Tate.

Maurice K. Guinn, Gentry, Tipton, Kizer & McLemore, P.C., Knoxville, Tennessee, for JHT/CJT Partners Limited.

### MEMORANDUM ON DEBTOR'S MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS

RICHARD S. STAIR, Jr., Chief Judge.

The Debtor, New Era Resorts, LLC, filed a Debtor–In–Possession's Motion for Authorization to Sell Property Free and Clear of Other Interests and/or Liens, Notice of Sale, and Notice of Hearing on May 11, 1999. By this motion, the Debtor seeks authorization to sell its real property located in Pigeon Forge, Tennessee, free and clear of liens and encumbrances. Objections to the motion were filed by four parties: People's Community Bank filed its objection on May 20, 1999; O'Charley's, Inc. filed its objection on May 27, 1999; Jon Tate filed his objection on July 1, 1999; and JHT/CJT Partners Limited filed its objection on July 12, 1999. JHT/CJT Partners Limited withdrew its objection on July 26, 1999, and Jon Tate withdrew his objection on July 30, 1999. As People's Community Bank is oversecured thus entitling it to payment of its secured claim in full from the proceeds of any sale, its objection, by agreement, will be overruled.

All issues were tried before the court on August 2, 1999. At the conclusion of the trial, the court reserved decision until August 4, 1999.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(N) (West 1993).

### I

The Debtor filed its petition under Chapter 11 on March 17, 1999. Its only asset consists of 3.1 acres of land on Highway 441 in Sevier County, Tennessee. The property is encumbered with liens totaling approximately $1,203,500.00 as follows: a first mortgage lien in favor of People's Community Bank in the approximate amount of $850,000.00; a second mortgage lien in favor of Jon Tate in the claimed amount of approximately $269,000.00; a third mortgage lien in favor of Pritam Gill in the approximate amount of $40,000.00; a fourth mortgage lien in favor of Mohinder Chima in the approximate amount of $40,000.00; and a lien for unpaid 1998 real property taxes owing Sevier County, Tennessee, in the approximate amount of $4,500.00. Although the Debtor acknowledges the validity of the lien of Jon Tate's second mortgage, it disputes the amount of Mr. Tate's claim.

Approximately 2.1 acres of the Debtor's property is unimproved. The other portion of the property, consisting of approximately one acre fronting on Highway 441 in Pigeon Forge, Tennessee, is improved with an O'Charley's restaurant. O'Charley's, Inc. occupies that property pursuant to a Lease Agreement executed by it and the Debtor on January 20, 1995. The lease is for a twenty-year term with options to renew for two five-year terms.

The lease includes the following provision, in material part, at paragraph 31:

In the event that at any time during the Initial Term or any Extension Term of this Lease, Lessor shall elect to sell or transfer all or any portion of the Premises to a third party, Lessee, or its assigns, are [sic] hereby given the right of first refusal to purchase the same in accordance with the procedures hereinafter set forth. In the event Lessor shall secure a firm offer in contract form executed by any purchaser, said offer shall be submitted to Lessee, or its successors, in writing, and the latter shall have thirty (30) days from the date of receipt of said notice in which to meet the terms of said purchase as set forth in said contract.... In the ... event Lessee shall fail to comply with the terms of said offer to purchase within the periods therein provided, Lessor shall have the right to sell the Premises to the purchaser designated in the original contract.

Paragraph 1 of the Lease Agreement defines the "Premises" as the property described in Exhibit A of the Lease Agreement. Exhibit A is a detailed surveyor's description of real property "being a 1.0396 acre tract."

By letter dated April 23, 1999, counsel for the Debtor notified O'Charley's, Inc. that the Debtor had received an offer to purchase the property. He sent O'Charley's, Inc. a copy of the proposed contract and asked it to make a decision regarding its right of first refusal.

The contract is a Real Estate Purchase Agreement dated April 26, 1999, signed by Thomas Properties, LLC and the Debtor. Under the contract, the entire 3.1 acre property is to be transferred to Thomas Properties, LLC by warranty deed for a sale price of $1,650,000.00 to be paid in full at a closing to occur on or before August 15, 1999. The sale is subject to the O'Charley's, Inc.'s lease. A ten percent commission is to be paid from the sale proceeds to Scott Boruff of Heath Shuler

Real Estate, LLC. The sale proceeds will be used by the Debtor to pay the undisputed mortgages and real property taxes encumbering the property. Funds sufficient to pay Jon Tate will be held pending resolution of the dispute regarding the amount of his claim.

By letter dated May 18, 1999, counsel for O'Charley's, Inc. notified the Debtor that it was exercising its right of first refusal. It stated that it would pay $950,-000.00 to purchase the one-acre tract that comprises its leasehold estate pursuant to the January 20, 1995 Lease Agreement. It acknowledged that the Real Estate Purchase Agreement included the entire 3.1 acre property, and explained that "on a per-acre basis, O'Charley's offer is significantly higher" than the Thomas Properties, LLC offer.

The Debtor, through a letter from its counsel dated May 21, 1999, informed O'Charley's, Inc. that

the purported election contained in your letter does not comply with the terms of the lease. Specifically, the offer of O'Charley's to purchase only the Premises does not "meet the terms of said purchase as set forth in the contract." As you know, the contract provides for the sale of the entire three acre tract and if O'Charley's would exercise its right to purchase the same, the debtor would obviously honor the same.

In a subsequent letter, dated June 11, 1999, counsel for the Debtor informed O'Charley's, Inc. that the Debtor's "ultimate goal is to sell the entire three acre tract and would like to sell the property as a whole." The letter then notified O'Charley's, Inc. that Thomas Properties, LLC had "restructured its offer" in an Addendum to Real Property Purchase Agreement. Under the restructured offer, Thomas Properties, LLC offers to pay $1,200,000.00 for the O'Charley's, Inc.'s one-acre tract and $450,000.00 for the 2.1 acre unimproved tract. Thomas Properties, LLC will not purchase the nonin-

come-producing unimproved tract without the O'Charley's, Inc.'s tract.

## II

By a Joint Statement of Issues filed on July 19, 1999, the parties identified nine issues to be resolved by the court. Five of those issues have been withdrawn or have been mooted by the withdrawal by JHT/CJT Partners Limited of its objection. The remaining four issues are summarized as follows:

1. Does the term "Premises" as defined in the January 20, 1995 Lease Agreement between the Debtor and O'Charley's, Inc. include the adjacent 2.1 acre unimproved tract?

2. Does the right of first refusal granted O'Charley's, Inc. under the January 20, 1995 Lease Agreement relate solely to the "Premises" as that word is defined under the Lease Agreement?

3. Did O'Charley's, Inc.'s purported exercise of its right of first refusal preclude the prospective purchaser, Thomas Properties, LLC, from restructuring its offer from a lump sum of $1,650,-000.00 to an allocation of the purchase price of $1,200,000.00 for the tract leased to O'Charley's, Inc. and $450,-000.00 for the unimproved tract?

4. Did O'Charley's, Inc.'s purported election to purchase a portion of the Debtor's real property for $950,000.00 comply with the terms of the right of first refusal contained in paragraph 31 of the January 20, 1995 Lease Agreement?

## III

O'Charley's, Inc. argues that the Debtor may not sell the property to Thomas Properties, LLC because that sale would violate its right of first refusal under the Lease Agreement.

Resolving disputes concerning written contracts involves a two-step process. First, as a threshold matter, the court must determine whether the contract is ambiguous. This is a question of law. If a contract's language is clear and unambiguous, the courts will interpret the contract according to its terms without going beyond the four corners of the agreement.... Contract language is ambiguous when its meaning is uncertain or when it can be fairly construed in more ways than one. The disputed language should be examined in the context of the entire agreement. The words should be given their usual, natural and ordinary meaning.

*See Seessel Holdings, Inc. v. Fleming Co., Inc.,* 949 F.Supp. 572, 575 (W.D.Tenn.1996) (citations omitted).

The Debtor and O'Charley's, Inc. argue whether the term "Premises" in the Lease Agreement includes the unimproved tract as well as the tract leased by O'Charley's, Inc. The word "Premises" is defined in the first paragraph of the Lease Agreement by reference to Exhibit A. Exhibit A is a surveyor's description of the one-acre tract leased by O'Charley's, Inc. There is no ambiguity. The word "Premises" does not include the 2.1 acre unimproved tract.

The court will now turn to the issues of whether O'Charley's, Inc.'s election to purchase the one-acre tract for $950,000.00 complied with the terms of its right of first refusal under paragraph 31 of the Lease Agreement and whether that election precluded Thomas Properties, LLC from reallocating the sale price associated with its original offer.

Under Tennessee law, the right of first refusal requires that the property owner, when and if he decides to sell the property, must first offer the property to the holder of the right. *See id.* at 576. If a third party makes a good faith offer to the property owner for the sale of the property, the right of first refusal becomes an option governed by the terms of the initial contract which granted the right. *See id.* To purchase the property, the party exercising the right of first refusal must strictly match the terms of the third party's offer, unless there is a contrary

agreement. *See id.* There are two exceptions to the rule requiring matching of the terms of the third party's offer: first, no terms may be imposed in order to defeat the right of first refusal and second, changes may be made, if necessary, to take into account the different identity of the parties. *See id.* (citing *West Texas Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1565–66 (5th Cir.1990)). In addition, the terms must be imposed in good faith and must be commercially reasonable. *See id.* at 576–77 (citing *West Texas Transmission, L.P.*, 907 F.2d at 1566). If the property owner meets these standards, then he "remains master of the conditions under which he will relinquish his interest." *West Texas Transmission, L.P.*, 907 F.2d at 1563.

The identity of the parties is not an issue in the present matter. O'Charley's, Inc. has not alleged, nor does the proof establish, that the unimproved 2.1 acre tract was included in the Thomas Properties, LLC offer in order to defeat O'Charley's, Inc.'s right of first refusal, or in bad faith, or that it is commercially unreasonable. In fact, the proof establishes that the value of the property as a whole is maximized only by the sale of the entire 3.1 acres.

There is no uniform rule adopted by courts faced with the situation now before this court, in which the third party offers to purchase the property subject to the right of first refusal together with additional property. The decisions fall into two categories. Some courts have decided that the right of first refusal must be exercised by matching the terms of a third party's offer, but that when the word "terms" is not defined in the contract in which the right is granted then the "terms" cannot be limited to mean "price" only. *See, e.g., id.* at 1564 (collecting cases). Accordingly, the purchase of additional land is viewed as a term of the contract which the holder of the right of first refusal must meet in order to exercise its right. *See id.* (citing *Crow–Spieker # 23 v. Robert L. Helms Constr. and Dev. Co.*, 103 Nev. 1, 731 P.2d 348, 350 (1987)).

This view respects the principles of contract law pertaining to offer and acceptance. *See id.* at 1565.

 Under Tennessee law, "[a]n option cannot be enforced as a contract until exercised by acceptance." *Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn.Ct. App.1984). The acceptance must be "unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms of the option." *Id.* An acceptance that fails to mirror an offer is no acceptance at all, but is a rejection of the offer and a counteroffer. *See Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 546 (6th Cir.1994). The property owner may accept the counter-offer, but is no longer bound by the right of first refusal because that right lapses when the holder fails to accept the offer. *See West Texas Transmission, L.P.*, 907 F.2d at 1565; *Seessel Holdings, Inc.*, 949 F.Supp. at 578 (Renegotiation of an offer is "fundamentally inconsistent with the exercise of a first refusal right.").

Other courts have decided differently. Those courts focus on ensuring that the holder of the right of first refusal receives the benefit of its bargain. *See Chapman v. Mutual Life Ins. Co.*, 800 P.2d 1147, 1151 (Wyo.1990). Under those decisions, the addition of other property to an offer is considered a burden which defeats the right of first refusal. *See id.* (collecting cases). Holders of the right of first refusal have been granted three general types of relief in that situation. Most often, courts will "return to the status quo ante and require a bona fide offer on the smaller tract before the right may be exercised or considered waived." *Id.* at 1152 (collecting cases). Courts have also granted relief in the form of specific performance at a value set by the court or monetary damages. *See id.*

Both lines of decision claim to represent the majority decision. *See id.* at 1151 ("The great majority of courts that have addressed this issue have held a preemptive right may not be defeated by a sale of the property burdened by the right as part

of a larger tract.") (collecting cases); *Gyurkey v. Babler*, 103 Idaho 663, 651 P.2d 928, 932 (1982) ("In prior cases, not involving the separate pricing of an included piece of property, the courts have overwhelmingly concluded that a seller may not defeat a preemptive right to purchase a particular piece of property by selling that property as part of a larger tract.") (collecting cases). *But see West Texas Transmission, L.P.*, 907 F.2d at 1564 ("most courts have insisted that purchasers replicate a myriad of nonprice conditions, including … the purchase of a larger quantity of land").

■■ This court is constrained to follow the line of decisions represented by *West Texas Transmission, L.P.* because it adheres to a basic tenet of contract law which is recognized in Tennessee: "In the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them." *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn.Ct.App.1992), *appeal denied* (1993) (citing *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355, 359 (1955)). When O'Charley's, Inc. entered into the Lease Agreement, it agreed at paragraph 31 that its right of first refusal regarding the one-acre leased tract could be exercised by meeting the "terms of said purchase as set forth in said contract" entertained by the Debtor and that upon O'Charley's, Inc.'s failure "to comply with the terms of said offer to purchase," the Debtor would have the right to sell the premises to the purchaser under the contract. The parties did not define the word "terms" in paragraph 31 of the Lease Agreement to require the Debtor to market the restaurant tract alone. Rather, the Lease Agreement refers to the "terms" of the offer "as set forth in said contract." That language is not ambiguous. It requires O'Charley's, Inc. to accept the Real Estate Purchase Agreement signed by Thomas Properties, LLC, without qualification. When O'Charley's, Inc. responded that it would purchase the one-acre restaurant tract for $950,000.00, it did not agree to meet the terms of the offer "as set forth in said contract." By that response, O'Charley's, Inc. rejected the offer, permitting its right of first refusal to lapse, and it made a counter-offer which the Debtor was free to accept or reject.

In summary, O'Charley's, Inc's purported exercise of its right of first refusal was ineffective because it failed to match the offer made the Debtor by Thomas Properties, LLC under the Real Estate Purchase Agreement. O'Charley's, Inc.'s offer to pay $950,000.00 for the restaurant tract constituted a rejection and counter-offer, which the Debtor was free to and did reject. The subsequent allocation of the purchase price by Thomas Properties, LLC between the two tracts is irrelevant.

### IV

■ Pursuant to 11 U.S.C.A. § 363(b)(1) (West 1993 & Supp.1999), the court has broad discretion in determining whether to approve a sale other than in the ordinary course of business. *See In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr.W.D.Mich.1995). The *Embrace Systems* court has described the main responsibility of the debtor and the primary concern of the court to be the "maximization of the value of the asset sold." *Id.* The burden falls on the debtor to show that it has obtained the best possible price for the asset. *See id.*

■ In the Sixth Circuit, a court may authorize a sale of a Chapter 11 debtor's assets under § 363(b)(1) if a "sound business purpose dictates [a sale]." *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.1986). No party in interest contends that Thomas Properties, LLC's offer to the Debtor of $1,650,000.00 for the 3.1 acres is not "the best possible price for the asset." The court finds that the sale is appropriate and will benefit creditors. An order will be entered granting the Debtor's motion. Pursuant to Section 2.7 of the Real Estate Purchase Agreement, the sale will, however, be subject to the January 20, 1995 Lease Agreement between the Debtor and O'Charley's,

Inc. The court will further direct that the property will be sold free and clear of the lien of Jon Tate with the lien of this creditor to attach to the proceeds of sale. The mortgage liens of People's Community Bank, Pritam Gill, and Mohinder Chima and the lien of Sevier County for unpaid real property taxes will be paid at closing together with necessary and usual closing costs excluding real estate commissions. The claim of Jon Tate will be allowed and paid upon a determination of the amount of Mr. Tate's allowed secured claim and the real estate commission due Scott Boruff of Heath Shuler Real Estate, LLC will be paid upon appropriate application and after notice and a hearing.

This Memorandum constitutes findings of fact and conclusions of law as required by FED.R.CIV.P. 52(a). An order memorializing this ruling will be entered today.