IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 6, 2006 Session

## JAMES TORRENCE, ET AL. v. THE HIGGINS FAMILY LIMITED PARTNERSHIP, ET AL.

Appeal from the Chancery Court for Polk County
No. 7101    Jerri S. Bryant, Chancellor

No. E2005-1549-COA-R3-CV - FILED APRIL 28, 2006

James Torrence and J.T. Lemons ("the plaintiffs") were lessees of a four-acre tract of land in Polk County. During the original term of the lease, their lessor transferred acreage, which includes the four acres under lease, to a family partnership, The Higgins Family Limited Partnership ("the Higgins Family"). During an extended term of the plaintiffs' lease, the Higgins Family, without the consent or knowledge of the plaintiffs, granted Hunter Properties Inc., an option to purchase a 370-acre tract – which includes the four acres – for $1,350,000. Upon subsequent written notice of the option to the plaintiffs by the Higgins Family, the lessees attempted to exercise a right of first refusal set forth in their lease. The right of first refusal provides that "[s]hould the Landlord, during the lease term, or any extended term, elect to sell all or any portion of the Leased Property, the Tenant shall have the right of first refusal to meet any bona fide offer of sale on the same terms and conditions of such offer." The plaintiffs assert that the right of first refusal extends to the entire 370-acre tract. The Higgins Family refused to sell the lessees the property and this suit followed. The trial court held that the lessees had properly exercised their right of first refusal and were entitled to purchase the property for $1,350,000. Hunter Properties filed a notice of appeal and all parties raise issues. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

James T. Williams and Robert F. Parsley, Chattanooga, Tennessee, for the appellant, Hunter Properties, Inc.

James F. Logan, Jr., Cleveland, Tennessee, for the appellees, James Torrence and J.T. Lemons.

H. Chris Trew, Athens, Tennessee, for the appellees, The Higgins Family Limited Partnership, Kenneth D. Higgins, Jr., and Jane Higgins Elliott.

**OPINION**

I.

On March 1, 1989, Jane Webb Higgins leased to the plaintiffs a four-acre tract of property for a period of three years.  The premises were described in the lease agreement as follows:

> That property located at or near the intersection of U.S. Highway #64 and Matlock Valley Road (Benton-Parksville Road) together with the improvements located thereon which are now being used by the Tenant as a service station, deli, dance pavilion, whitewater rafting business (in the old motel) and an overnight camping facility (Sugar Loaf Campground), which property consists of an area that is to be marked by boundary stakes by the Landlord and Tenant, hereinafter called the "Leased Property".

The lease contains the following pertinent provision:

> <u>Tenant's Option to Purchase – Right of First Refusal</u>.  Should the Landlord, during the lease term, or any extended term, elect to sell all or any portion of the Leased Property, *the Tenant shall have the right of first refusal to meet any bona fide offer of sale on the same terms and conditions of such offer*.  Upon the Tenant's failure to meet such bona fide offer, within thirty (30) days after notice thereof from the Landlord, the Landlord shall be free to sell the Leased Property to such third person in accordance with the terms and conditions of such offer.

(Underlining in original; emphasis added).  The lease term was extended on more than one occasion, with the last extension being through December 31, 2003.

In March, 1998, the plaintiffs' lessor, Jane Webb Higgins, transferred her interest in approximately 210 acres of real estate – which included the leased property – to the Higgins Family. The partners of the Higgins Family were Mrs. Higgins' children, Kenneth D. Higgins, Jr., and Jane Higgins Elliott.  The children owned an additional 160-acre tract of land adjacent to the 210-acre parcel.

In 2002, the Higgins Family decided to market the combined 370-acre parcel of property for sale.  On April 8, 2003, the Higgins Family, during the term of the last extension of the plaintiffs' lease, entered into an option agreement ("the option agreement") with Hunter Properties, granting

-2-

it the option to purchase the 370-acre tract for $1,350,000. The plaintiffs were not parties to this option and were not aware that the Higgins Family intended to grant it. The option agreement states that the option will remain in effect for four months at no charge to Hunter Properties. The option agreement further provides that Hunter Properties is granted the right to extend the option for two additional four-month periods, upon payment of $10,000 for each extension.

On April 16, 2003, the Higgins Family provided the plaintiffs with a written "Notice of Bona Fide Offer of Purchase," which states, in pertinent part, as follows:

> Pursuant to numerical twenty (20) of the original lease agreement by and between JANE WEBB HIGGINS as "landlord" and JAMES TORRENCE AND J.T. LEMONS, as "tenant" dated March 1, 1989, and the extensions of the term of that lease entered into thereafter, the landlord hereby gives *notice to the tenant of a bona fide offer of purchase of the property presently leased by tenant.*
>
> The property presently under lease to tenant is only a portion of the property upon which the offer to purchase has been received, but the offer in fact, encompasses all of the property presently leased to tenant.
>
> The owners of all the property have elected to accept the bona fide offer and sell all of this property, including the portion presently leased to the tenant.
>
> Under numerical paragraph twenty (20) of the original lease mentioned above, the landlord hereby gives notice to the tenant of the receipt of the bona fide offer and the election of the landlord and owners to accept such offer.
>
> The offer is in fee simple for certain parcels or tracts of land, containing 370 acres more or less, situated in Polk County, (Benton), Tennessee. The consideration for the option is that the purchaser is granted four (4) months at no cost within which to exercise the option to purchase, then if the option has not been exercised within the first four month period of time, the purchaser shall pay Ten Thousand dollars ($10,000) for an additional four month option and if not exercised within that period of time, the purchaser shall pay an additional Ten Thousand dollars ($10,000) for an additional four month option. If the option to purchase is in fact exercised any sums paid mentioned herein are applied as a credit toward the entire purchase price at the closing. If the purchaser exercises the option, the total price to the paid is One Million Three Hundred Fifty

Thousand dollars ($1,350,000) payable at the closing. There are additional terms set forth in the offer to purchase regarding notices, default, owner's warranties, assignment, damage to property, survey, availability of utilities, closing, recording of option, parties bound, condemnation, inspection and title, which the landlord will share with the tenant if requested.

Pursuant to numerical paragraph twenty (20) of the original lease mentioned above, *this shall be deemed notice to tenant of tenant's right of first refusal to meet all terms of the bona fide offer mentioned herein within thirty (30) days of this notice.* If tenant does not exercise its right of first refusal, the landlord is free to sell the leased property to the third person having set forth the bona fide offer to purchase in accordance with the terms and conditions of such offer.

(Capitalization in original; emphasis added).

On May 13, 2003, within 30 days of the receipt of the notice, the plaintiffs sent a letter ("the Letter") to the Higgins Family indicating that they were exercising their right of first refusal:

Re:    Notice of Exercise of Right of First Refusal under Lease Dated March 1, 1989 (the "Lease") by and between The Higgins Family Limited Partnership (successor-in-interest to the interests of Jane Webb Higgins, deceased) ("Landlord") and J.T. Lemons and James Torrence (collectively, the "Tenant")

Dear Kenny [Higgins],

The undersigned, as Tenant under the above-referenced Lease, does hereby provide its notice that it is exercising its Right of First Refusal under Paragraph 20 of the Lease in accord with Landlord's Notice of Bona Fide Offer Of Purchase dated April 16, 2003 (the "Landlord's Offer Notice") with respect to 370 $\pm$ acres located in Benton, Polk County, Tennessee (the "Property") which Property includes the leased premises of approximately 4 $\pm$ acres and approximately 366 $\pm$ acres of additional land.

The Tenant does hereby request all information with respect to the offer (the "Offer") that is set forth in the Landlord's Offer Notice, including but not limited to information regarding the option that is part of the Offer. Pursuant to the terms of the Offer set forth in the Landlord's Offer Notice, the Tenant is prepared to and desires to

enter into agreements with the Landlord on the terms of the Offer set forth in the Landlord's Offer Notice.

Please execute a copy of this letter where indicated below signifying Landlord's acknowledgment of the exercise of the Right of First Refusal by the Tenant and Landlord's acknowledgment of the rights of the Tenant to purchase the Property according to the terms of the Offer set forth in the Landlord's Offer [N]otice upon execution of appropriate documentation. Thank you for your attention to this matter.

Sincerely,

Tenant

/s/ J.T. Lemons

/s/ James Torrence

As a part of the transmittal to the Higgins family, the plaintiffs included a separate unsigned document ("the acknowledgment document"), soliciting the acknowledgment of the Higgins Family as follows:

The undersigned, as Landlord under the Lease, does hereby ratify and affirm the terms of the Lease, acknowledges that the Lease is in full force and effect, acknowledges the Lease shall remain in full force and effect (provided Tenant continues the payments of rent and performance of Tenant's obligations under the Lease) for the period that the Offer set forth in the Landlord's Offer Notice shall remain outstanding and acknowledges the rights of the Tenant to purchase the Property under and according to the terms of the Offer set forth in the Landlord's Offer Notice. The undersigned, as Landlord under the Lease, does hereby acknowledge that the rights of the Tenant to purchase the Property shall have priority over any other purchaser and shall continue for the time parameters set forth in the Offer. The undersigned further agrees that the Tenant may record a copy of this letter (or a similar document in recordable form) in the appropriate deed recording offices to evidence Tenant's rights to purchase the Property and the undersigned agrees to promptly (within three (3) days of Tenant's request) execute a recordable document to such effect if requested to do so by the Tenant. Executed this ___ day of May, 2003.

The following day, on May 14, 2003, an attorney for the plaintiffs faxed to the Higgins Family a confirmation that the plaintiffs were exercising their right of first refusal. Two weeks later, counsel for the Higgins Family sent a letter to the plaintiffs, informing them that the Higgins Family would not accept the plaintiffs' "offer," contending that the plaintiffs "did not exercise the right of first refusal in a proper and timely manner" in that it added "a material and substantial change to the offer received from Hunter Properties," *i.e.*, it "included an extension of the term of the Lease beyond its current expiration of December 31, 2003," and, accordingly, the "offer" was not "on the same terms and conditions of the offer of Hunter Properties." The letter then proceeded to inform the plaintiffs that the Higgins Family intended to sell the entire 370-acre tract to Hunter Properties. The following week, the plaintiffs' then-attorney sent a letter to the attorney for the Higgins Family, informing him that the plaintiffs "are dead serious about purchasing the Higgins Family property."

The Higgins Family extended the term of Hunter Properties' option on August 7, 2003, and again on December 8, 2003, when, on both occasions, Hunter Properties paid it $10,000.

On March 5, 2004, the plaintiffs filed a complaint in the trial court against the Higgins Family and Hunter Properties, seeking a determination as to the respective rights of the parties to the 370 acres at issue and, alternatively, "to recover damages against . . . Hunter Properties . . . for procuring a breach of contract and/or [to recover damages against the Higgins Family] for breach of contract." In addition, the plaintiffs deposited $20,000 with the clerk of court, and asserted that they were doing so to indicate "their willingness and desire to close the purchase of the subject property at the stated purchase price" of $1,350,000.

After filing answers and counterclaims, Hunter Properties and the Higgins Family each filed a motion for partial summary judgment, claiming that the plaintiffs had "no right to purchase the property at issue," due to the plaintiffs' alleged failure to properly exercise their right of first refusal. The plaintiffs then filed their own motion for partial summary judgment, contending that they were, in fact, entitled to purchase the 370 acres.

On February 15, 2005, the trial court entered an order granting the plaintiff's motion for partial summary judgment, stating, in pertinent part, as follows:

> The matter is before the Court essentially on stipulated facts. Though the parties may have differences on certain factual issues, the parties announced in open Court that it is the opinion of each party that the material and necessary facts for disposition of the Motions for Partial Summary Judgment are undisputed. Specifically the parties stipulated and acknowledge the authenticity of the following documents.
>
> 1. The Lease of the plaintiffs which contained a Right of First Refusal is as set forth in Paragraph 20 of said Lease . . . .

2. A Standard Option Agreement which was entered into between [the Higgins Family] and [Hunter Properties] on April 8, 2003, . . . .

3. The Notice of Bona Fide Offer of purchase from [the Higgins Family] to the plaintiffs which was mailed on April 16, 2003, . . . .

4. The letter dated May 2003 bearing the signature of the plaintiffs which was returned to [the Higgins Family] in a timely manner. . . . There was accompanying the two signed pages an acknowledgment of receipt form . . . .

5. Counsel for the plaintiffs returned via telefax . . . a fax letter dated May 14, 2003 . . . .

6. The next written communication between the parties is the letter of counsel for [the Higgins Family] which is dated May 30, 2003, . . . .

7. Plaintiffs' counsel's letter of June 5, 2003 constituted the response of [the plaintiffs] . . . .

* * *

The Court further announced that the contract being the Leases and the letters involved in this matter are unambiguous. The Court further announced that the first two pages of [the plaintiffs' letter to the Higgins Family dated May 13, 2003] was a signed acceptance by the plaintiffs, and [the attached acknowledgment document] was not a condition precedent to acceptance of the Right of First Refusal and [that document], at the most, may have been an offer on a separate part or separate issue that existed between the parties but was not a condition precedent. The contract with the lease and the Right of First Refusal which was accepted unconditionally by the plaintiffs in this case is enforceable and their Motion for Partial Summary Judgment is granted. The plaintiffs shall be entitled to purchase this property at the price negotiated by [Hunter Properties].

On June 10, 2005, the trial court entered an order, pursuant to Tenn. R. Civ. P. 54.02, stating that the primary issue in the case centered on the plaintiffs' right to purchase the subject property and that there was "no just reason for delay of entry of final judgment on this issue." From this judgment, Hunter Properties filed a notice of appeal.

II.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In this case, the parties announced to the trial court that "the material and necessary facts for disposition of the Motions for Partial Summary Judgment are undisputed."

Since a motion for summary judgment presents a pure question of law, our review is *de novo* on the record of the proceedings below with no presumption of correctness as to the trial court's judgment. ***Gonzales v. Alman Constr. Co.***, 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993).

III.

The plaintiffs, by way of a motion to dismiss this appeal, challenge the right of Hunter Properties to raise issues regarding the propriety of the trial court's action. The plaintiffs point out that the trial court's order required the Higgins Family to convey the subject property to the plaintiffs; thus, according to the plaintiffs, the Higgins Family is an "indispensable party" to an appeal challenging the propriety of that decision. Because, so the argument goes, the Higgins Family, an "indispensable party," did not file a notice of appeal, Hunter Properties cannot raise issues that directly bear upon the rights of an indispensable party. In essence, the plaintiffs are contending that, before Hunter Properties could raise these issues, the Higgins Family had to pursue an appeal by way of a separate notice of appeal.

The plaintiffs' argument is bottomed on a false premise – that an aggrieved party, here the Higgins Family, must file a notice of appeal before issues pertaining to it can be raised. This is simply not true. Under Tenn. R. App. P. 3(e), "[a]n appeal as of right to the . . . Court of Appeals . . . shall be taken by timely filing a notice of appeal with the clerk of the trial court . . . ." The timely filing of a notice of appeal, by *any* party involved in the trial court litigation, vests the Court of Appeals with jurisdiction to hear and resolve all issues thereafter raised, not only the issues raised by the party filing the notice of appeal but also the issues raised by any other party aggrieved by some action of the trial court. *See* Tenn. R. App. P. 13(a). In ***Dunlap v. Dunlap***, 996 S.W.2d 803 (Tenn. Ct. App. 1998), we stated the following:

> As a general rule, *a party to an appeal* may present any question of law for this court's review. Rule 13(a) governs this court's scope of review and provides that, "[e]xcept as otherwise provided in Rule 3(e) [addressing waiver of certain issues in jury trials], any question of law may be brought up for review and relief by any party." T.R.A.P. 13(a). In its comment on rule 13(a), the advisory commission explained that

-8-

this subdivision rejects use of the notice of appeal as a review-limiting device. In federal practice the notice of appeal has limited review in two principal ways. Some courts have limited the questions an appellant may urge on review to those affecting the portion of the judgment specified in the notice of appeal. However, since the principal utility of the notice of appeal is simply to indicate a party's intention to take an appeal, this limitation seems undesirable. The federal courts have also limited the issues an appellee may raise on appeal in the absence of the appellee's own notice of appeal. Here again, since neither the issues presented for review nor the arguments in support of those issues are set forth in the notice of appeal, there seems to be no good reason for so limiting the questions an appellee may urge on review. The result of eliminating any requirement that an appellee file the appellee's own notice of appeal is that *once any party files a notice of appeal the appellate court may consider the case as a whole*.

*Id*. at 810-11(emphasis added; bracketing in original). *See also Edwards v. Hunt*, 635 S.W.2d 696, 698 (Tenn. Ct. App. 1982) (stating that "[i]t was the intention of Rule 13 TRAP that only one notice of appeal be filed"); *Scott v. Noland Co.*, No. 03A01-9502-CV-00072, 1995 WL 440375, at *1 n.1 (Tenn. Ct. App. E.S., filed July 26, 1995) (holding that "[a] party who does not file a notice of appeal can still raise issues in its brief"); *Glidden v. Glidden*, No. 86-320-II, 1987 WL 9452, at *2 (Tenn. Ct. App. M.S., filed April 16, 1987) (holding that "once an appeal has been taken from a final order pursuant to [Tenn. R. App. P.] 3, any question of law or fact involved in the case as a whole may be considered by the appellate court").

The Special Workers' Compensation Panel of the Supreme Court was faced with a somewhat similar situation in *Hughes v. Memphis Light, Gas & Water*, in which the defendant utility appealed the judgment of the trial court, after which the Second Injury Fund, another party to the case, raised an issue on appeal. *Id.*, No. W2000-01056-WC-R3-CV, 2001 WL 468581, at *1 (Tenn. Sp. Workers' Comp. Panel, filed May 3, 2001). The plaintiff argued that the Second Injury Fund did not have standing to participate in the appeal because it did not file a notice of appeal. *Id.*, at *3. The panel rejected that argument, noting that Tenn. R. App. P. 13(a) does not require separate appeals. The panel held that "[a]ny question of law may be brought up for review by any party once a party has appealed." *Id.*

The notice of appeal filed by Hunter Properties brought with it, not only Hunter Properties and the plaintiffs, but the Higgins Family as well. All were properly before the trial court and, by

virtue of Hunter Properties' notice of appeal, all are now properly before us. All parties are allowed to raise such issues as they see fit.

IV.

A.

Hunter Properties contends – and the Higgins Family supports its contention – that the trial court erred in granting the plaintiffs' motion for partial summary judgment and in holding that the plaintiffs were entitled to purchase the whole 370-acre tract of land. Hunter Properties raises the following three issues:

> 1. Did the trial court err in determining that the plaintiffs properly exercised their right of first refusal?
>
> 2. Even if the plaintiffs properly exercised their right of first refusal, should they be prevented from purchasing the subject property due to their failure to satisfy the terms of the option agreement?
>
> 3. Are the plaintiffs entitled to purchase the entire 370-acre parcel of land, as opposed to the four-acre parcel that had been leased to them?

We will address each issue in turn.

B.

Hunter Properties argues that the trial court erred in holding that the plaintiffs were entitled to purchase the subject property because, according to Hunter Properties, the plaintiffs failed to properly exercise their right of first refusal. Hunter Properties points out that the right of first refusal contained in the lease agreement requires the plaintiffs "to meet any bona fide offer of sale on the same terms and conditions of such offer." When the plaintiffs exercised their right of first refusal in the Letter, the plaintiffs included with the Letter the acknowledgment document seeking the acknowledgment of the Higgins Family to various things, including the Higgins Family's assent to the proposition that "the Lease shall remain in full force and effect . . . for the period that the Offer set forth in the Landlord's Offer Notice shall remain outstanding." According to Hunter Properties, the addition of the acknowledgment document had the effect of varying the terms and conditions of Hunter Properties' offer, thereby invalidating the plaintiffs' attempted exercise of the right of first refusal.

A right of first refusal "limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy." **Koella v. McHargue**, 976 S.W.2d 658, 661 (Tenn. Ct. App. 1998) (quoting **Johnson v. Herren**, No. 88-160-II, 1988 WL 119278, at *4 (Tenn. Ct. App. E.S., filed Nov. 10, 1988)). "[T]he party exercising the right of first

-10-

refusal must strictly match the terms of the third party's offer, . . . ." ***In re New Era Resorts***, 238 B.R. 381, 385 (Bankr. E.D. Tenn. 1999):

> An acceptance that fails to mirror an offer is no acceptance at all, but is a rejection of the offer and a counter-offer. The property owner may accept the counter-offer, but is no longer bound by the right of first refusal because that right lapses when the holder fails to accept the offer.

***Id.*** at 386 (internal citations omitted).

Hunter Properties contends that the plaintiffs violated the "mirror image rule" by including terms in their attempted acceptance of the Higgins Family's offer that did not match the terms of the offer made by Hunter Properties. We disagree.

The acknowledgment document is on a separate piece of paper. It does not state that its terms are a part of the terms of the plaintiffs' exercise of their right of first refusal. By the same token, the Letter does not state that the plaintiffs' acceptance of the offer of the Higgins Family is conditioned upon the Higgins Family agreeing to the requests set forth in the acknowledgment document. In a straightforward manner, the Letter recites that the plaintiffs

> as Tenant under the above-referenced Lease, does hereby provide its notice that it is exercising its Right of First Refusal under Paragraph 20 of the Lease in accord with Landlord's Notice of Bona Fide Offer Of Purchase dated April 16, 2003 (the "Landlord's Offer Notice") with respect to 370 $\pm$ acres located in Benton, Polk County, Tennessee (the "Property") which Property includes the leased premises of approximately 4 $\pm$ acres and approximately 366 $\pm$ acres of additional land.

As can be seen, the Letter does not state, expressly or by implication, that if the Higgins Family does not agree to the requested extension of the lease, the plaintiffs' acceptance, as set forth above, is withdrawn, or null and void, or other than fully and completely valid and enforceable.

While it is obvious that the plaintiffs wanted the Higgins Family to sign the acknowledgment document in order to have written proof of various things – including that the plaintiffs could continue to occupy the four acres beyond the period of the then-existing lease extension – we find nothing in the plaintiffs' correspondence of May 13, 2003, that constitutes the addition of a new term or provision to the offer of the Higgins Family to sell the 370 acres on the terms of the offer made to the Higgins Family by Hunter Properties.

We hold that the plaintiffs properly exercised their right of first refusal by indicating their willingness to match the terms of the offer of Hunter Properties to buy the 370 acres. In short, the

plaintiffs *did* "strictly match the terms" of the option agreement when they exercised their right of first refusal. *Id.* at 385. Accordingly, we find no error in the trial court's decision holding that the plaintiffs properly exercised their right of first refusal.

C.

Hunter Properties contends that, even if the plaintiffs properly exercised the right of first refusal, they should not be permitted to purchase the subject property because of their failure to satisfy the terms of the *option*. The option gave Hunter Properties two opportunities to extend the option period, provided it made a timely payment of $10,000 for each extension. The plaintiffs did not make a $10,000 payment to the Higgins Family by either August 8, 2003, or December 8, 2003 (the deadlines for extending each of the option periods). Therefore, according to Hunter Properties, this failure by the plaintiffs to meet the requirements of the option vitiates their right to purchase the property.

The position of Hunter Properties misses the mark. The right of first refusal in the lease is triggered by a third party's *offer* to buy the property. When Hunter Properties indicated to the Higgins Family that it was interested in purchasing the 370-acre tract, the Higgins Family, in violation of the plaintiffs' right of first refusal, granted Hunter Properties an unqualified option. In notifying the plaintiffs of the relationship it had developed with Hunter Properties with respect to the property, the Higgins Family treated the *option* to purchase as if it were an *offer* to purchase. This is clear from the Higgins Family's "Notice of Bona Fide *Offer* of Purchase." (Emphasis added). Under the right of first refusal, the plaintiffs had to match the "offer" part of the deal between the Higgins Family and Hunter Properties. This the plaintiffs did. The plaintiffs did not have to meet the *option* part of the deal. They actually did *more* than simply assent to enter into an *option* to buy the property; they made an outright acceptance of the "offer." While the plaintiffs, in exercising their right of first refusal, asked for information regarding the option granted to Hunter Properties, this request for information does not change the fact that the plaintiffs agreed to buy the property for $1,350,000. The Higgins Family, in notifying the plaintiffs of its dealings with Hunter Properties, chose to bypass the option part of the deal and treat it as if it were an outright offer to purchase. The Higgins Family said, in effect, "we have an offer for the property and here is the offer. Will you match it?" The plaintiffs clearly responded "yes."

The Higgins Family *ultimately* offered to sell the property to the plaintiffs as it was required to do by the terms of the lease. The plaintiffs' acceptance of that offer created a binding contract. The option – a grant to Hunter Properties that the Higgins Family was without authority to make – is a "red herring." It is simply not material to the issue of whether the plaintiffs matched the "offer" part of Hunter Properties' option.

D.

Finally, Hunter Properties argues that, even if the plaintiffs properly exercised their right of first refusal, they were only entitled to purchase the four acres which were the subject of the lease,

-12-

rather than the entire 370-acre tract of land. Our review of the record reveals a fatal deficiency with respect to this issue; *it was never raised below by Hunter Properties or the Higgins Family*. It is well-settled that issues not raised at the trial court level may not be raised for the first time on appeal. ***Simpson v. Frontier Cmty. Credit Union***, 810 S.W.2d 147, 153 (Tenn. 1991). However, even had this issue been raised, we doubt that it would have had merit. We note that the "Notice of Bona Fide Offer of Purchase" that the Higgins Family sent to the plaintiffs – after detailing the terms of the "offer of purchase" by Hunter Properties – recites that the plaintiff's right of first refusal extends to "all terms of the bona fide offer mentioned [in the Notice]." Since the "offer of purchase" pertains to *all* of the 370 acres, and not just the premises leased to the plaintiffs, we do not understand how it can be seriously argued that the tenant's right of first refusal only extended to the leased premises. It is clear to us that the Higgins Family – in drafting the Notice to the plaintiffs – interpreted the "right of first refusal" language in the lease to encompass the entire 370 acres.

V.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed half to Hunter Properties, Inc., and half to the Higgins Family Limited Partnership.

_____<br>CHARLES D. SUSANO, JR., JUDGE